OPINION
{¶ 1} The appellants, Robert and Brenda Noaker, appeal the October 22, 2003 judgment of the Common Pleas Court of Henry County, Ohio, in favor of the appellee, Connie Gerdeman, Administratrix of the Estate of Joseph Gerdeman, deceased, based upon a jury verdict in favor of the estate.
 {¶ 2} On May 13, 2001, a collision between a lawn tractor, driven by Robert Noaker, and a motorcycle driven by Joseph Gerdeman occurred on County Road S ("C.R. S") in Liberty Center, Ohio. At the time of the accident, Joseph was traveling westbound on C.R. S with his wife, Connie Gerdeman. At that same time, Robert was mowing grass around his mailbox on the north side of C.R.S. The Gerdeman motorcycle then struck the lawn tractor from behind, causing Robert to be thrown from it. As a result, Joseph was killed, Connie was injured and hospitalized for nearly a week, and Robert's leg suffered a severe laceration when the lawn tractor ran over it. A blood test later revealed that Joseph's blood alcohol content ("BAC") that day was 0.15.
 {¶ 3} Originally, Joseph's estate filed a complaint on December 3, 2001, against Robert for wrongful death. Thereafter, the Noakers filed a complaint for personal injury against Joseph's estate on January 18, 2002. These cases were eventually consolidated, and the parties reached an agreement as to the complaint filed by Joseph's estate against Robert. However, the complaint filed by the Noakers against the estate proceeded to a three-day jury trial on October 14-17, 2003. At the conclusion of the trial, the jury returned a verdict in favor of Joseph Gerdeman's estate, finding that Joseph was not negligent and was not the proximate cause of Robert's injuries. This appeal followed, and the Noakers now assert four assignments of error.
The Common Pleas Court erred in denying Appellants' Motion forDirected Verdict.
 The Common Pleas Court erred in instructing the jury on thedefense of sudden emergency.
 The Common Pleas Court erred in admitting the testimony ofPaul W. Murray.
 The Judgment of the Common Pleas Court is against the manifestweight of the evidence.
 First Assignment of Error {¶ 4} The Noakers first assert that the trial court erred in denying their motion for a directed verdict on the issue of whether Joseph's intoxication should result in the loss of his preferential right-of-way on C.R.S. Essentially, they maintain that preferential right-of-way is afforded to drivers who are operating in a lawful manner and that Joseph was not driving in a lawful manner due to the fact that he was intoxicated. Thus, they contend that the trial court should have granted them a directed verdict as to this issue and not have instructed the jury on this matter.
 {¶ 5} The Civil Rules permit parties to make a motion for a directed verdict. Civ.R. 50. In determining whether to grant such a motion, the trial court must decide
whether after construing the evidence most strongly in favorof the party against whom the motion is made, * * * that upon anydeterminative issue, reasonable minds could come to but oneconclusion upon the evidence submitted and that conclusion isadverse to such party. In such event, the court is not the trierof the facts and does not weigh the evidence in ruling on themotion.
 Bank One, Dayton, N.A. v. Doughman (1988), 59 Ohio App.3d 60,62, fn. 4. Thus, a directed verdict presents questions of law, which we review de novo. See Goodyear Tire Rubber Co. v. AetnaCas. Surety Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 4.
 {¶ 6} In the case sub judice, the trial court provided the following instruction to the jury:
A motorist has a duty to use ordinary care when traveling on apublic road. The duty of ordinary care applies in this case, notonly to the Defendant, but to the Plaintiff. A driver of avehicle about to enter a highway from any place other thananother roadway, must yield the right-of-way to all trafficlawfully approaching on the roadway before entering the highway.A failure to do so is negligence.
The Noakers maintain that the trial court should not have given this instruction to the jury because the evidence revealed that Joseph's BAC level was 0.15 at the time of the collision, which meant that he was not lawfully operating his motorcycle because he was driving with a prohibited concentration of alcohol in his system.
 {¶ 7} The Revised Code provides: "The operator of a vehicle * * * about to enter or cross a highway from any place other than another roadway shall yield the right of way to all traffic approaching on the roadway to be entered or crossed." R.C.4511.44. The right-of-way is defined as follows: "The right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path." R.C. 4511.01(UU). In construing these sections together, the Ohio Supreme Court has held that "[t]hese sections confer an absolute right-of-way upon the vehicle on the highway, qualified only by the requirement that, in proceeding uninterruptedly, it must proceed in a lawful manner." Beers v. Wills (1962), 172 Ohio St. 569, paragraph two of the syllabus. In order to proceed in a lawful manner, a person must be complying with Ohio traffic laws. Vavrina v. Greczanik
(1974), 40 Ohio App.2d 129, 136.
 {¶ 8} Here, Joseph was driving with a prohibited concentration of alcohol in his blood in violation of former R.C.4511.19(A).[1] Therefore, he forfeited his absolute right-of-way pursuant to Beers. See, also, State v. Gates
(1983), 10 Ohio App.3d 265, 268 (finding that intoxication may result in the loss of preferential right-of-way in a negligence action). However, the trial court did not instruct the jury that Joseph had the right-of-way. Rather, as previously noted, the trial court instructed the jury that "[a] driver of a vehicle about to enter a highway from any place other than another roadway, must yield the right-of-way to all traffic lawfully
approaching on the roadway before entering the highway." (Emphasis added.) Thus, the jury was correctly instructed that the right-of-way was to be yielded to traffic lawfully approaching.
 {¶ 9} The instruction concluded with a statement by the trial court that the failure to yield the right-of-way was negligence. This statement referred to negligence on the part of Robert. However, the jury did not find that Robert was negligent, as Interrogatory #2 asked. Rather, the jury only answered Interrogatory #1, which asked: "Was the defendant [Joseph Gerdeman] negligent and did that negligence directly and proximately cause any injury to the plaintiff?" and never addressed any negligence on the part of Robert. Thus, the jury did not necessarily assign fault to anyone in particular, including Robert, the person to whose actions the right-of-way instruction were addressed.
 {¶ 10} Moreover, the forfeiture of the preferential right-of-way merely results in the "relative obligations of the drivers of the converging vehicles [being] governed by the rules of the common law." Morris v. Bloomgren (1933),127 Ohio St. 147, paragraph three of the syllabus (construing similar sections 6310-28 and 6310-28a of the General Code). Each driver is still required to exercise ordinary care. Therefore, even if Joseph lost his preferential right-of-way, the burden remained with the Noakers to show negligence on his part and that this negligence was the proximate cause of Robert's injuries, which they, apparently, were unable to do, given the jury's verdict.
 {¶ 11} Given the actual language employed by the court in its instruction to the jury and the fact that the Noakers retained the burden of demonstrating negligence and proximate causation even with the loss of the preferential right-of-way, any possible error by the trial court in denying a directed verdict on this issue was harmless. Thus, the first assignment of error is overruled.
 Second Assignment of Error {¶ 12} In their second assignment of error, the Noakers contend that the trial court erred in instructing the jury about the law of sudden emergency. The Ohio Supreme Court has previously held that "requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591, citing Markus Palmer, Trial Handbook for Ohio Lawyers (3 Ed. 1991) 860, Section 36:2; see, also, Feterlev. Huettner (1971), 28 Ohio St.2d 54, syllabus. The Court further noted that the rule to apply in determining whether an instruction should be given and the scope thereof is that "`it should be adapted to and embrace all issues made by the pleadings and the evidence. * * * The instruction should be broad enough to properly cover the issues presented for consideration, or all the facts in issue which the evidence tends to establish or disprove.'" Murphy, 61 Ohio St.3d at 591, fn. 3, quoting 89 Ohio Jurisprudence 3d (1989) 354-355, Trial, Section 289 (footnotes omitted).
 {¶ 13} During its instructions to the jury, the trial court instructed the jury on the doctrine of sudden emergency. This doctrine provides that "one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence." Mapes v. Opper
(1983), 9 Ohio App.3d 140, 141, citing Scott v. Marshall
(1951), 90 Ohio App. 347, 365.
 {¶ 14} An instruction regarding the sudden emergency doctrine may be given to a jury if the defendant presents evidence that (1) an emergency existed; (2) the emergency was not the fault of the defendant or any circumstance under his control; and (3) that the defendant exercised such care as a reasonably prudent person would exercise under the same or similar circumstances. Radeckiv. Lammers (1968), 15 Ohio St.2d 101, paragraph two of the syllabus; see, also, Bush v. Harvey Transfer Co. (1946),146 Ohio St. 657, 664-665. "When a defendant offers evidence of facts from which it may be inferred that his violation of such legal requirement was due to the existence of a sudden emergency arising without his fault, the questions of his liability in the premises, and of the proximate cause of injury resulting from such violation, are for the jury." Satterthwaite v. Morgan
(1943), 141 Ohio St. 447, paragraph three of the syllabus; see, also, Radecki, 15 Ohio St.2d at 104; Francis v. Bieber
(1967), 10 Ohio St.2d 65, 68; Stutz v. LaForest (1992),83 Ohio App.3d 883, 886; Nomic v. Pettry (1972), 32 Ohio App.2d 152,155. However, "[w]here the defense of sudden emergency is unwarranted, it is prejudicial error for the trial court to charge the jury thereon." Zehe v. Falkner (1971),26 Ohio St.2d 258, paragraph five of the syllabus.
 {¶ 15} In the case sub judice, Connie Gerdeman testified that moments before the accident, she heard her husband say, "Oh, God, don't do it." Immediately thereafter, the motorcycle began to slide and the next thing she remembered was lying in the grass wondering what had happened. The two Henry County Sheriff's Deputies who investigated the accident testified that neither one could tell what caused the collision. However, the expert for the defense, a twenty-seven year veteran of the Ohio State Highway Patrol specializing in accident reconstruction, testified that the lawn tractor driven by Robert was partially in the roadway at the time of the collision. Although this testimony was contradicted by the Noakers' expert, who had both a bachelor's and master's degree in mechanical engineering and four years of experience in accident reconstruction, there was sufficient evidence by which a jury could conclude that Robert drove his lawn tractor onto the roadway, causing Joseph to react. Thus, the question of whether a sudden emergency existed, which was not due to any action by Joseph, and whether Joseph exercised such care as a reasonably prudent person would exercise under the same or similar circumstances was properly submitted to the jury. Accordingly, the second assignment of error is overruled.
 Third Assignment of Error {¶ 16} The Noakers next assert that the trial court improperly permitted the testimony of Paul Murray, the Noakers' next door neighbor. During the trial, the estate presented the testimony of Paul Murray. Murray testified that Robert also mowed around his mailbox, which was located on the northside of C.R. S, on the day of the accident. Specifically, Murray testified that he came home that evening and noticed Robert mowing around his mailbox. Murray testified that when Robert mowed around the Murray mailbox, he entered C.R. S without looking to see whether any traffic was coming. Murray further testified that he witnessed Robert mow around his mailbox on at least six previous occasions in the same manner, including entering the roadway without looking for oncoming traffic. The Noakers objected to this testimony, but the trial court overruled this objection.
 {¶ 17} The Noakers now maintain that this testimony was impermissible because it was irrelevant. They also assert that this testimony was used to show that Robert acted in conformity with these previous instances at the time of the incident, which is prohibited by the Rules of Evidence. Thus, they maintain that the trial court erred in allowing this testimony over their objection.
 {¶ 18} This Court's analysis of this issue begins by noting that "the decision of whether or not to admit evidence rests in the sound discretion of the [trial] court[.]" Wightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 437, citingPeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299; see, also, State v. Sage (1987), 31 Ohio St.3d 173, 182. Thus, this Court will not disturb the trial court's decision unless the court abused its discretion. When applying the abuse of discretion standard, this Court is not permitted to simply substitute its judgment for that of the trial court. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732. Rather, in order to reverse the decision of the trial court, we must determine that the trial court's action is "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 256. Thus, it is within the foregoing constructs that we proceed to determine the propriety of the admission of this evidence.
 {¶ 19} The Rules of Evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided * * * by these rules[.]" Evid. R. 402. The term "relevant evidence" is also defined by the Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. However, the Rules of Evidence explicitly exclude a myriad of potentially relevant items from trial. One such exclusion is other acts evidence. Evid.R. 404(B).
 {¶ 20} Evidence Rule 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, this Rule allows this type of evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). In addition, "[e]vidence of the habit of a person * * *, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit[.]" Evid.R. 406.
 {¶ 21} In the case sub judice, Murray gave testimony that showed both the plan and habit of Robert when he mowed around Murray's mailbox, which Evid.R. 404(B) and 406 permit. He did not provide evidence regarding Robert's plan and/or habit in mowing around his own mailbox. Robert specifically denied it was his intent to enter the roadway to mow around his own mailbox on the day of the accident. Nevertheless, both mailboxes were located on the northside of C.R. S, across the road from the Noaker and Murray homes, and Robert testified that he often mowed around both mailboxes whenever he mowed his lawn. Therefore, the jury could infer from this and other evidence that he acted in the same manner as to both mailboxes on the day of the accident. Therefore, the trial court did not abuse its discretion in permitting this testimony.
 {¶ 22} In any event, any error in the admission of Murray's testimony regarding Robert's actions when mowing around Murray's mailbox was harmless. Robert, himself, testified that he entered the roadway without looking for oncoming traffic when he mowed around Murray's mailbox the day of the accident. Thus, Murray's testimony regarding Robert's actions on the day in question merely reiterated what Robert had previously stated during his own testimony. Therefore, the third assignment of error is overruled.
 Fourth Assignment of Error {¶ 23} In the Noakers' fourth assignment of error, they assert that the jury's verdict was against the manifest weight of the evidence. A cause of action for negligence, such as that alleged by the Noakers, requires a plaintiff to show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77, citing Di Gildo v.Caponi (1969), 18 Ohio St.2d 125; Feldman v. Howard (1967),10 Ohio St.2d 189. The Ohio Supreme Court has held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The reason for this deference to the fact finder is that the fact finder, be it a jury or a judge, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc.v. City of Cleveland (1984), 10 Ohio St.3d 77, 80. Thus, the jury's verdict in this case need only be supported by some, competent credible evidence that Joseph was not negligent and/or that Robert's injuries were not the result of Joseph's negligence.
 {¶ 24} During the trial, the Noakers' theory of the case was that Robert did not enter the roadway prior to being struck by Joseph's motorcycle and that Joseph's intoxication resulted in his poor judgment and reflexes, causing him to misjudge the situation, lose control of his motorcycle, and hit Robert's lawn tractor. In support of this theory, they presented evidence that Joseph was intoxicated at the time of the incident and also provided the testimony of a pharmacologist and toxicologist regarding the effects of alcohol on a person. In addition, Robert testified that he was hit from behind and did not see what happened, but he knew that he did not enter the roadway as he was approaching his mailbox. The Noakers also presented an expert witness, Jeffrey Krummen. Krummen testified that Robert's lawn tractor was on the berm of the road near his mailbox when he was struck by Joseph, that Joseph had ample opportunity to stop his motorcycle prior to hitting Robert, and that Joseph's actions caused Robert's injuries.
 {¶ 25} In response to the Noakers' theory, the Gerdeman estate presented its case under the theory that Robert entered the roadway, causing Joseph to attempt to avoid the collision but to no avail. In support of this position, Connie Gerdeman testified that she heard her husband say, "Oh, God, don't do it," and they immediately began to slide, resulting in the collision with the lawn tractor. However, she did not actually see what occurred. Additionally, the defense expert, Frederick Greive, testified that the left rear wheel of Robert's lawn tractor was on the roadway by approximately 12"-18" when it was struck and that the lawn tractor was angled in a northwest direction, which accounted for the location of the mailbox, north of its post, after it was hit by the lawn tractor.
 {¶ 26} Given the aforementioned evidence, the jury was presented with a conflicting account of events, one placing Robert's lawn tractor on the berm of the road at all relevant times and the other placing it on the roadway at some point. Further, the jury heard the testimony of the two deputies who responded to the accident and investigated it, neither of whom was able to ascertain what caused the accident or to place the precise location of the lawn tractor and motorcycle at the time of the collision.
 {¶ 27} Once again, the Noakers had the burden of demonstrating by a preponderance of the evidence that Joseph had a duty to Robert, breached that duty, and that this negligence caused Robert's injuries. With this conflicting evidence, particularly in light of the fact that two deputies trained in accident reconstruction could not determine its cause, the jury could reasonably determine that the cause of the accident was unknown. Thus, its verdict, reflecting that the Noakers did not satisfy their burden of proof, was not against the manifest weight of the evidence, and the fourth assignment of error is overruled.
 {¶ 28} For these reasons, the judgment of the Common Pleas Court of Henry County, Ohio, is affirmed.
Judgment affirmed.
 Cupp and Bryant, J.J., concur.
[1] At the time of the accident, R.C. 4511.19(A) prohibited a person from operating a motor vehicle with a concentration of one-tenth of one per cent or more. As of June 30, 2003, this concentration was lowered to eight-hundredths of one per cent or more.