OPINION
{¶ 1} Plaintiff-Appellant, Lori Carroll, appeals a judgment of the Auglaize County Court of Common Pleas, vacating her default judgment against Defendant-Appellee, Dairy Farmers of America, Inc. ("DFA"), and granting DFA's motion for summary judgment. Carroll maintains that DFA failed to prove excusable neglect and that the trial court abused its discretion by vacating the default judgment. Carroll also maintains that summary judgment was improper because material issues of fact remain unresolved.
 {¶ 2} After reviewing the entire record, we find that the trial court vacated the default judgment pursuant to a motion for reconsideration under Civ.R. 54(B), not a motion to vacate under Civ.R. 60(B). Therefore, DFA was not required to establish excusable neglect, and the trial court's ruling that vacated the default judgment is reviewed by this Court under an abuse of discretion standard without regard to the Civ.R. 60(B) requirements. Furthermore, we find that the trial court did not act unreasonably, arbitrarily or unconscionably when it vacated the default judgment. Accordingly, the trial court's decision to vacate the default judgment against DFA is affirmed, and Carroll's first assignment of error is overruled.
 {¶ 3} Regarding the summary judgment motion, we find that material issues of fact remain concerning whether DFA was directly responsible for the design, modification or installation of the support platform from which Carroll fell. There is also a material issue of fact pertaining to the similarity between the type of business conducted by DFA and the type of business conducted by Carroll's employer, Central Soya Company, Inc. ("Central Soya"). Accordingly, it was improper for the trial court to grant DFA summary judgment, and Carroll's second and third assignments of error are sustained.
 {¶ 4} In 1996, Dairy Farm Products ("DFP") was the owner and operator of a dairy processing and packaging plant located in New Bremen, Ohio. Around October of 1996, DFP contracted with Heyne Construction Incorporated ("Heyne Construction") for the fabrication and installation of a support platform designed to fit around a metal receiver/hopper. The design called for the construction of a steel frame around the receiver/hopper along with a platform, ladder, handrails and bracing.
 {¶ 5} In April of 1997, DFP again contracted with Heyne Construction for the creation of new room at DFP's New Bremen facility. The new room was designed and constructed to be a powder packaging room that would be utilized for the packaging of various dehydrated dairy products. During the course of this construction project, DFP merged with another company and became DFA. DFA assumed DFP's contract with Heyne Construction.
 {¶ 6} After the construction of the new room was complete, the receiver/hopper and its support platform were modified and installed in the new powder packaging room. Heyne Construction was not responsible for the subsequent modification or relocation of the receiver/hopper and its support platform.
 {¶ 7} In November of 2000, DFA sold the New Bremen plant to Central Soya. Central Soya shut down the plant for several months in order to modify the existing equipment and install additional equipment. Around April of 2001, Central Soya reopened the New Bremen facility. The only modification that Central Soya had made to the receiver/hopper and its support platform was to remove the ladder on the right hand side of the platform and cover up the hole in the platform where the ladder had been.
 {¶ 8} In August of 2001, Carroll was employed by Central Soya as a process operator. During a scheduled cleaning of the receiver/hopper, Carroll fell from the receiver/hopper's support platform and sustained serious injuries. Consequently, Carroll initiated suit against DFA, alleging that the support platform had been negligently designed, fabricated and installed by DFA.
 {¶ 9} DFA failed to file a timely response to Carroll's original complaint, and the trial court granted Carroll default judgment on April 4, 2002. Subsequently, DFA filed a motion to vacate the default judgment. DFA based its motion to vacate on the claim that it had never received the complaint. By stipulation of the parties, the default judgment was vacated, and the case was dismissed without prejudice pursuant to Civ.R. 41(A)(1).
 {¶ 10} On October 15, 2002, Carroll filed a new complaint against DFA, alleging the same basis for liability that she had in her first complaint. DFA again failed to file a timely answer, and Carroll was again granted default judgment. However, the trial court reserved the issue of damages for a later hearing.
 {¶ 11} Once again, DFA filed a motion to vacate the default judgment. This time DFA acknowledged receiving Carroll's complaint; however, DFA claimed that, through an inadvertent mistake of one of its employees, the complaint had been copied and placed in a filing cabinet without being forwarded to the legal department. DFA based its motion to vacate on Civ.R. 60(B) and claimed that its failure to file a timely response was the product of excusable neglect.
 {¶ 12} After conducting a hearing on DFA's motion to vacate, the trial court found that DFA had proven excusable neglect pursuant to Civ.R. 60(B) and vacated the default judgment against DFA. Consequently, Carroll appealed the trial court's judgment to this Court.
 {¶ 13} In Carroll v. Dairy Farmers of America, Inc., 3rd Dist. No. 2-03-20, we sua sponte dismissed Carroll's appeal for lack of jurisdiction. Because the trial court's default judgment had reserved the issue of damages for a later hearing, we held that the order was interlocutory. "A Civ.R. 60(B) motion for relief from such an interlocutory order will be properly taken by the trial court as a motion for reconsideration." Chitwood v. Zurich American Ins. Co., 10th Dist. No. 04AP-173, 2004-Ohio-6718, at ¶ 9. Therefore, we found that the trial court had actually vacated the default judgment through a motion for reconsideration pursuant to Civ.R. 54(B). A judgment granting reconsideration of an interlocutory order, even if erroneously stating that the order is "vacated" pursuant to Civ.R. 60(B), is not a final appealable order. Schelich v. Theatre Effects, Inc. (1996),111 Ohio App.3d 271, 272. Accordingly, Carroll's appeal was dismissed for lack of jurisdiction.
 {¶ 14} Subsequent to our holding, DFA filed a motion for summary judgment with the trial court. DFA claimed that it was not liable for the injury to Carroll because it had not been involved with the design, installation or modification of the receiver/hopper's support platform. DFA also claimed that the dehydrated milk products it produced in the powder packing room were substantially less slippery than the dehydrated soy products produced by Central Soya. Accordingly, DFA maintained that the injury Carroll suffered would have been unforeseeable to it at the time of any alleged design, installation or modification.
 {¶ 15} In response, Carroll alleged that material issues of fact remained concerning whether DFA had in fact modified the receiver/hopper's support platform in such a manner as to cause it to become unsafe. She also asserted that material issues of fact remained regarding the foreseeability of her injury.
 {¶ 16} After considering the evidence and the memorandums of both parties, the trial court found that there was no evidence that DFA had been involved in the design, installation or modification of the receiver/hopper's support platform. The trial court also found that the dehydrated soy product produced by Central Soya was substantially more slippery than the dehydrated milk product produced by DFA. Therefore, the trial court found that there were no material issues of fact and that DFA owed Carroll no duty. Accordingly, the trial court granted DFA summary judgment.
 {¶ 17} From this judgment Carroll appeals, presenting three assignments of error for our review.
 Assignment of Error I The trial court erred in granting Appellee relief from judgment underCivil Rule 60(B), in the judgment entry dated June 6, 2003.
 Assignment of Error II The trial court erred in denying Motion of Plaintiffs for OrderPrecluding Defendant Dairy Farmers of America from asserting that nomodifications to the subject platform were made by it in the journalentry, orders on DFA's motion for summary judgment dated July 16, 2004.
 Assignment of Error III The trial court erred in granting Appellee's motion for summaryjudgment.
 Assignment of Error I {¶ 18} In her first assignment of error, Carroll maintains that the trial court erroneously vacated her default judgment against DFA. She claims that DFA was unable to prove excusable neglect under Civ.R. 60(B).
 {¶ 19} As discussed above, the trial court's order granting Carroll default judgment was an interlocutory order, and such an order of the court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Civ.R. 54(B). "A motion that seeks relief from an interlocutory order is more properly characterized as a motion for reconsideration."Beck-Durell Creative Dept., Inc. v. Imaging Power, Inc., 10th Dist. No. 02AP-281, 2002-Ohio-5908, at ¶ 9, citing Pitts v. Dept. ofTransportation (1981), 67 Ohio St.2d 378, 379. Accordingly, we must review the trial court's vacation of the default judgment as if it were a motion for reconsideration made pursuant to Civ.R. 54(B). Id.; Baker v.Schuler, 2nd Dist. No. 02CA0020, 2002-Ohio-5386, at ¶ 21-22; Chitwood at ¶ 9.
 {¶ 20} "The power conferred on the court by Civ.R. 54(B) to vacate an interlocutory order is not subject to the provisions of Civ.R. 60(B), which applies only to final judgments and orders." Baker at ¶ 22. Thus, the trial court was not required to make a finding of excusable neglect prior to vacating the default judgment in question. "Because a trial court has plenary power in ruling on a motion for reconsideration, we cannot reverse its judgment absent an abuse of discretion." Hundsrucker v.Perlman, 6th Dist. No. L-03-1293, 2004-Ohio-4851, at ¶ 25, citing Vanestv. Pillsbury Co. (1997), 124 Ohio App.3d 525, 535. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 21} In the case sub judice, the trial court made the finding that DFA had not shown a systematic disregard for the laws of Ohio. In reaching this determination, the trial court found that the first default judgment against DFA had been the fault of DFA's mail courier who did not properly deliver the complaint to DFA. The second default judgment was due to a breakdown in DFA's own internal process for dealing with legal summons. Consequently, the trial court found that both default judgments were caused by unrelated mistakes and that there was no pattern of a systematic disregard for Ohio's laws. The trial court also found that DFA had a procedure in place for dealing with and answering legal complaints, that DFA had quickly responded to the default judgment once it was discovered, that DFA had committed an honest mistake under circumstances not likely to reoccur and that it was the preferred policy of Ohio to decide a case based on its merits. Accordingly, the trial court granted DFA's motion to vacate the default judgment.
 {¶ 22} Nothing in the record before us indicates that the trial court acted unreasonably, arbitrarily or unconscionably by vacating the default judgment. To the contrary, the findings made by the trial court are supported by the record and show that the trial court was concerned with ensuring that DFA was not involved in any fraud or recurring incompetence. Therefore, Carroll's first assignment of error is overruled, and the judgment of the trial court vacating the default judgment is affirmed.
 Assignments of Error II III {¶ 23} In her second and third assignments of error, Carroll challenges the decision of the trial court to grant DFA's summary judgment motion. Carroll contends summary judgment was improper because material issues of fact remain. Because both of these assignments of error address summary judgment, we will address them together using the following standard of review.
 Standard of Review {¶ 24} An appellate court reviews a summary judgment order de novo.Hillyer v. State Farm Mut. Auto. Ins. Co. (1999), 131 Ohio App.3d 172,175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. Dayton Heidelberg Distr. Co., 148 Ohio App.3d 596,2002-Ohio-3932, at ¶ 25, citing State ex rel. Cassels v. Dayton CitySchool Dist. Bd. of Ed. (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C);Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
 {¶ 25} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. State ex rel. Burnes v. AthensCity Clerk of Courts (1998), 83 Ohio St.3d 523, 524; see, also, Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Negligence {¶ 26} To prove negligence, one must show the existence of a duty, a breach of that duty and an injury resulting proximately therefrom. Noakerv. Gerdeman, 3rd Dist. No. 7-03-10, 2004-Ohio-2799, at ¶ 23, citingMenifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77, citing Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 127; Feldman v.Howard (1967), 10 Ohio St.2d 189, 193. "The existence of a duty depends on the foreseeability of the injury." Menifee, 15 Ohio St.3d at 77, citing Ford Motor Co. v. Tomlinson (C.A. 6, 1956), 229 F.2d 873, 880;Gedeon v. East Ohio Gas Co. (1934), 128 Ohio St. 335, 338-339.
 {¶ 27} The test for determining the foreseeability of an injury is whether a reasonably prudent person would have anticipated that the injury was likely to result from the performance or nonperformance of an act. Menifee, 15 Ohio St.3d at 77, citing Freeman v. United States (C.A. 6, 1975), 509 F.2d 626, 629-630; Thompson v. Ohio Fuel Gas Co. (1967),9 Ohio St.2d 116, 118-119; Mudrich v. Standard Oil Co. (1950),153 Ohio St. 31, 36-37. Foreseeability arises only from those circumstances that actually were or should have been perceived. Menifee,15 Ohio St.3d at 77. "Until specific conduct involving an unreasonable risk is made manifest by the evidence presented, there is no issue to submit to the jury." Id., citing Englehardt v. Philipps (1939),136 Ohio St. 73, 77-78; Prosser Keeton Law of Torts (5 Ed. 1984) 169, Section 31.
 {¶ 28} Carroll maintains that the receiver/hopper's support platform, as modified and installed in the newly constructed powder packaging room, was unreasonably dangerous. Furthermore, she asserts that DFA was responsible for the modification and installation of the receiver/hopper's support platform that resulted in it becoming unreasonably dangerous. Accordingly, she maintains that DFA's modification and installation of the support platform created a foreseeable risk of injury to employees working in the powder packaging room.
 {¶ 29} In granting DFA summary judgment, the trial court found that the record was devoid of any evidence that DFA was responsible for the subsequent modification or installation of the support platform in the newly constructed room. We disagree.
 {¶ 30} The extent of the evidence in the record proving that DFA was not responsible for the modification or installation of the support platform is the unsupported statements of Sidney Cumberland and Gerald Shope. It should be noted that Cumberland is a current DFA employee, and Shope is a former DFA employee.
 {¶ 31} The evidence tending to prove DFA was involved with the modification and installation of the receiver/hopper and its support platform in the powder packaging room comes from the affidavit of Jack Heyne. Heyne is the president of Heyne Construction, and he was directly involved with the fabrication and installation of the receiver/hopper's support platform in its original room. Heyne was also involved in the construction of the new room that the receiver/hopper and its support platform were moved to. Heyne stated in his affidavit that the receiver/hopper and its support platform were moved to and installed in the new room and that modifications were done to the support platform. He also stated that Heyne Construction was not responsible for this subsequent installation and modification. Furthermore, Shope acknowledged in his deposition that the support platform for the receiver/hopper had been modified and installed in the powder packaging room during the time that DFA owned the plant.
 {¶ 32} Therefore, the undisputed evidence in the record proves that the receiver/hopper and its support platform were modified and installed in the powder packaging room during DFA's ownership of the plant. Furthermore, Carroll was able to prove that the construction company that had originally created and installed the support platform was not responsible for the subsequent changes and modifications. In contrast, DFA was unable to provide any solid evidence regarding who had subsequently modified and installed the support platform. Instead, it relied on the unsupported assertion that they were not the ones responsible for the subsequent changes to the support platform. No contracts were produced showing that an outside company had conducted the work, and DFA did not even provide the name of any contractor who they claimed had performed the modifications and installation.
 {¶ 33} DFA was in a unique position to provide information concerning the modification and installation of the support platform. If, as DFA claims, it was not responsible for the modification and installation of the support platform, it is not too much to require them to provide at least the name of the outside contractor who performed the work that Carroll claims was done in an unreasonably dangerous manner. Viewing the evidence, as we must, in a light most favorable to the nonmoving party, we have no choice but to conclude that a material issue of fact remains concerning who modified and installed the receiver/hopper and its support platform during DFA's ownership of the plant.
 {¶ 34} Furthermore, it appears from the affidavit of Carroll's expert witness, Kenneth Berchak, that the unreasonably dangerous aspect of the support platform might arise not only from the modifications made to the platform, but also from the decision to place the receiver/hopper in the powder packaging room. In his affidavit, Berchak states that "[a]s modified and installed in the new room, the equipment was hazardous. This was because in the environment, it was expected and known that the platform and ladders would become coated with slippery residue from the operations * * *." (Berchak affidavit, page 3, para. 8.)
 {¶ 35} Thus, it seems that Carroll is alleging not just that the receiver/hopper was negligently installed or modified, but that the very decision to install the receiver/hopper in the powder packaging room was negligent. Material issues of fact remain concerning the environment in the powder packaging room, the design of the support platform and whether an injury such as the one suffered by Carroll was reasonably foreseeable.
 {¶ 36} The trial court also found that the product Central Soya produced was significantly more slippery than the product that DFA produced. Therefore, the trial court concluded that the risk created by the use of the support platform under Central Soya's ownership would not have been foreseeable to DFA. While we agree with the trial court's legal reasoning that a company should not be held liable for the design of formerly owned machinery that is put to unforeseeable uses by its current owner, we find that material issues of fact remain concerning the similarity between the products created by Central Soya and DFA.
 {¶ 37} In his deposition, Shope testified that the dehydrated soy product produced by Central Soya was a "bit more slippery" than the dehydrated milk product produced by DFA. However, he went on to say that the difference between the slipperiness of the two products was not striking. Additionally, he testified that both products were rather slippery when mixed with water. At the very least, this testimony shows that there is a material issue of fact concerning the similarities between the two products and whether the risk created by Central Soya's use of the New Bremen facility would have been foreseeable to DFA.
 {¶ 38} Based on the above, we find that material issues of fact remain and that summary judgment was inappropriate. Accordingly, Carroll's second and third assignments of error are sustained, and the judgment of the trial court granting DFA summary judgment is reversed.
 {¶ 39} Having found error prejudicial to the appellant in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 Cupp, P.J. and Shaw, J., concur.