D'AGASTINO et al., Appellants,

v.

The UNIROYAL–GOODRICH TIRE COMPANY
et al.; The Budd Company, Appellee.

[Cite as *D'Agastino v. Uniroyal–Goodrich Tire Co.* (1998), 129 Ohio App.3d 281.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1400.

Decided Aug. 7, 1998.

*Robert M. Scott,* for appellants.

*Richard M. Kerger, Michael W. Duffy* and *Edward M. Kay,* for appellee.

HANDWORK, Presiding Judge.

This appeal is from the October 23, 1997 judgment of the Lucas County Court of Common Pleas, in which the court held that its prior order granting summary judgment to appellee, the Budd Company, and dismissing the claims filed against the company by appellants, Michael and Crystal D'Agastino, was a final order. On appeal, appellants assert the following assignments of error:

"I. The trial court erred in granting appellee's motion for summary judgment because the evidence presented by appellants was sufficient to create a jury question on the claim of design defect.

"II. The trial court erred in granting appellee's motion for summary judgment because the evidence presented by appellants was sufficient to create a jury question on the claim of failure to warn."

Appellant was injured while attempting to mount and properly seat a sixteen-inch tubeless tire onto a 16.5-inch wheel. The rim was manufactured by appellee. Claims against other companies named as defendants in the suit are not involved in this appeal. Of the initial causes of action made against appellee only one remained at the time appellee sought summary judgment. This cause of action was for product liability with two claims: that the rim was defectively designed and that appellee failed to warn appellants of the risks and hazards of using the rim.

Appellee moved for summary judgment, asserting that appellants could not prove the prima facie elements of their cause of action. The trial court agreed and granted summary judgment to appellee. On appeal, appellants challenge that ruling on the ground that there were genuine issues of material fact that precluded the granting of summary judgment.

To determine whether summary judgment was appropriately granted, a reviewing court must apply Civ.R. 56. *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114. Summary judgment is an appropriate shortcut to litigation whenever there is no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the issues presented must be resolved adversely to the nonmoving party and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

R.C. 2307.75(A) provides generally that a product is defective in design if "at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation * * * exceeded the benefits associated with that design or formulation."

. An exception is made to the general rule where if "at the time the product left the control of its manufacturer, a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product, unless the manufacturer acted unreasonably in introducing the product into trade or commerce." R.C. 2307.75(F).

Determination whether there were foreseeable risks associated with the design of a product must be in part based upon consideration of the following factors:

"(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

"(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

"(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

"(4). The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer." R.C. 2307.75(B)

Determination of the benefits associated with the design must be in part based upon the following factors:

"(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

"(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

"(3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation." R.C. 2307.75(C)

■ The evidence relating to design defect is as follows. The rim was manufactured by appellee in July 1968. The tire was manufactured in 1982. Harry Baumgardner, a former engineer for Firestone, testified that although the technology in the mid 1960s would have permitted the production of a sixteen–inch tire/wheel assembly to support a three-quarter-ton pickup truck, none were being manufactured until the early to mid 1970s. He further testified that part of the industry was advocating that product, but Firestone decided to go ahead with the 16.5–inch tire/wheel assembly. However, Donald Scraver, a former employee for appellee and currently a consultant for the company, testified that until the mid 1970s a sixteen–inch wheel could not be made because the sixteen–inch tires available lacked flexibility to be put over a single-piece drop-center wheel. Robert Harold, who worked for Firestone Steel Products Company, testified that he helped develop the 16.5–inch wheel. He too testified that at that time, a sixteen–inch wheel could not be made because the sixteen–inch tires available lacked flexibility to be put over a single-piece drop-center sixteen–inch wheel. He did not believe that this was feasible until 1975.

Baumgardner also testified that if he had known of the potential mismatching problems in the 1960s, he could have developed either a sixteen–inch or 16.75–inch tire to avoid the problem. Baumgardner first learned of mismatch accidents

in 1969, and his copies of the minutes of the meetings of the Tire and Rim Association indicate that the mismatch hazard was known to the association in 1972. Nonetheless, in his affidavit submitted to the court with appellants' motion for reconsideration, he attested that even before 1968, mismatching was possible because the a sixteen–inch tire and inner tube could be placed on the 16.5–inch wheel assembly with the same explosive results.

Appellee contends that appellants presented no evidence that appellee had knowledge of the mismatch hazard prior to 1968. However, also attached to the motion for reconsideration were excerpts from the deposition of Sam I. Roudebush, who attested that prior to 1965, he attended meetings of the Tire and Rim Association and discussed the dangers of mismatch associated with the 16.5–inch wheel. He believed that the representatives of appellee attended those meetings, because they generally attended the meetings.

Furthermore, Alan Milner, Ph.D., testified that appellee should have done predictive failure analysis on the 16.5–inch wheel in 1968 to determine whether smaller tires could be put on it and what would happen. He also believed that such information was available at the time and, therefore, that appellee should have known of the dangers.

Despite this conflicting evidence, the trial court concluded from the expert testimony that there was no alternative design available at the time the wheel was manufactured. We disagree. We find that there are genuine issues of material fact regarding the issues of whether it was necessary to make the 16.5–inch tire/wheel in 1968 and whether appellee knew or should have known of the mismatching hazard in 1968.

A product is defective due to inadequate warning or instruction pursuant to R.C. 2307.76, which states:

"(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

"(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

"(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

"(B) A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge."

■ The size of the rim was initially stamped on the well of the rim, which would be covered by the tire. Both Baumgardner and Kenneth Laughery, Ph.D., testified that in 1968 they were not aware of any wheel manufacturer that stamped the size on the outside of the rim. However, Baumgardner concluded that because of the mismatch danger known throughout the industry by at least 1972, appellant should not have continued to manufacture the wheel without adequate warnings in a position where a person could see the size of the wheel after a tire had been placed on the rim. In his opinion the off-product warnings appellee gave to the public were inadequate because they did not prevent this accident. Laughery testified that although the postproduction warning campaign by appellee was more extensive than those by other companies, he was still critical of it because it did not adequately warn consumers like appellant. Both Baumgardner and Milner testified that the wheel should have been recalled in 1972 before there were too many of them on the market. Baumgardner and Milner also testified that the sixteen–inch tire mounted on a 16.5–inch wheel could also explode even if the recommended pressure was not exceeded. Milner criticized appellee's warning publications, which implied that the hazard of explosion was created only if the recommended pressure was exceeded in order to seat the tire.

Despite all of this evidence, the trial court determined that appellee could not have warned consumers about the mismatching problem because it had no knowledge of the problem in 1968 and did conduct an extensive warning campaign. We disagree. Based on the evidence presented above, there remain genuine issues of material fact as to whether appellee knew or should have known

of the hazards presented by this wheel in 1968 and whether its postproduction warning campaign was adequate to warn consumers such as appellant.

 We note that much of the evidence that creates an issue of fact in this case comes from the evidence submitted with appellants' motion for reconsideration. While such a motion is a nullity in the trial court after final judgment has been entered in the case, the court retains jurisdiction to reconsider an interlocutory order any time before the entry of final judgment in the case, either *sua sponte* or upon motion. *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379–380, 21 O.O.3d 238, 238–239, 423 N.E.2d 1105, 1106–1107, and *Fid. & Guar. Ins. Underwriters, Inc. v. Aetna Cas. & Sur. Co.* (June 30, 1993), Lucas App. No. L92–024, unreported, 1993 WL 241583. The trial court may reconsider its decisions at its discretion. *Id.*

 In this case, the court's order granting summary judgment on July 8, 1997, was not a final order because the court did not indicate in the order that it was to be its final judgment and that there was no just reason for delaying an appeal from that decision while other issues remained to be tried. Because the order was interlocutory, the trial court had the discretion to consider the additional evidence presented by appellants. Since the trial court did not abuse its discretion by considering the evidence, we may do so as well.

 Appellee contends that the evidence should be excluded because it is not newly discovered evidence. We disagree. There is no requirement that such evidence be newly discovered. A motion for reconsideration is not the equivalent of a Civ.R. 60(B) motion.

 Appellee also argues that Baumgardner's affidavit cannot be used to contradict his earlier testimony or the undisputed facts in its motion for summary judgment. First, an affidavit cannot be used if it contradicts the affiant's prior sworn testimony. *Stair v. Phoenix Presentations, Inc.* (1996) 116 Ohio App.3d 500, 507, 688 N.E.2d 582, 586–587. Nothing in Baumgardner's affidavit contradicts his depositional testimony.

Appellee also contends that Baumgardner's affidavit cannot be used to contradict previously established undisputed facts. Appellee's undisputed fact is its statement in its motion for summary judgment that in 1968 a sixteen–inch tube-type tire could not be mounted on the 16.5–inch rim without substantially damaging the tire. Appellee presented no evidence to support this statement. Appellee merely pointed out a fact that it believed appellants could not prove. In response, appellants submitted Baumgardner's affidavit, which proves that this type of mismatch was possible in 1968. The fact that this proof was presented in a motion for reconsideration is irrelevant in this case because the trial court chose to consider it.

 Appellee contends that appellants cannot use Roudebush's deposition against them because it contradicts Baumgardner's prior depositional testimony. The function of the rule prohibiting the use of an affidavit that contradicts prior sworn testimony is to prevent a party from creating a question of fact by proving two opposing facts. That was not the case here. Baumgardner testified that he had no information that appellee knew of the mismatching hazard prior to the date it was first named in a lawsuit. Roudebush testified that he discussed the mismatching hazard at meetings that appellee's representatives generally attended.

 Appellee next contends that Roudebush's affidavit cannot be admitted into evidence because his deposition was not taken in this case and appellee did not participate in the depositional proceedings. In support of its argument, appellee cites *Plikerd v. Mongeluzzo* (1992), 73 Ohio App.3d 115, 596 N.E.2d 601. In *Plikerd*, the court refused to consider portions of depositions attached to the party's appellate brief to determine whether summary judgment was properly granted to the opposing party because the depositions had never been before the trial court. Furthermore, in dicta, the court indicated that the deposition could not be used against the opposing party because it was taken before the opposing party was a party to the suit. In a more recent decision from that same appellate court this statement was corrected. *Gerken v. Mir* (Nov. 30, 1995), Mercer App. No. 10–95–7, unreported, 1995 WL 723157. The *Gerken* court held that a deposition taken prior to joinder of a party "is at least as good as an affidavit which is allowed by Civ.R. 56," citing *Napier v. Brown* (1985), 24 Ohio App.3d 12, 15, 24 OBR 33, 36–37; 492 N.E.2d 847, 850–851. Accord *Newland v. Amin* (1991), 75 Ohio App.3d 616, 619, 600 N.E.2d 357, 359. Cf. *Francis v. Cleveland* (1992), 78 Ohio App.3d 593, 605 N.E.2d 966 (depositional excerpts that exclude the deponent's name are not admissible evidence to create a genuine issue of material fact). Other courts have extended the rule to depositions taken in different cases. *Teichman v. Tripodo* (Sept. 6, 1990), Cuyahoga App. No. 57419, unreported, 1990 WL 127924.

We conclude that the Roudebush deposition could be used in this case to create a genuine issue of material fact as to whether there was a failure to warn in this case.

We conclude that the trial court erred by granting summary judgment to appellee in this case because there are genuine issues of material fact. Appellants' two assignments of error are well taken.

Having found that the trial court committed error prejudicial to appellants, we reverse the judgment of the Lucas County Court of Common Pleas. This case is remanded to the lower court for further proceedings consistent with this decision.

Pursuant to App.R. 24, appellee is hereby ordered to pay the court costs incurred on appeal.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK and KNEPPER, JJ., concur.