DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, which granted summary judgment to defendant-appellee, Buckeye Union Insurance Company ("Buckeye"), on the claim of plaintiff-appellant, Diane E. Hundsrucker, for underinsured motorist ("UIM") coverage.
 {¶ 2} Appellant is a visiting nurse. On July 12, 1996, she was injured when her motor vehicle was rear-ended by the tortfeasor, Robert E. Perlman. On July 19, 1998, appellant commenced a negligence action against the tortfeasor, a negligent entrustment action against the "John Doe" owner of the motor vehicle, and appellant's motor vehicle insurer, State Farm Insurance. State Farm was subsequently voluntarily dismissed, without prejudice, from this action.
 {¶ 3} On January 7, 2000, the trial court granted appellant's motion to join the Ohio Bureau of Workers Compensation ("Bureau") as a party. The Bureau filed a cross-claim seeking subrogation from the tortfeasor for appellant's medical expenses and compensation for wages that the Bureau provided to appellant. Appellant filed a first amended complaint in response to the Bureau's cross-claim naming the Bureau as an additional defendant. The Bureau answered and asserted a counterclaim asserting its right to subrogation and reimbursement from any monies paid to appellant for her injury. The Bureau maintained that "[a]s a result of the injury alleged" in appellant's complaint, it paid, on her behalf, $32,016.49 for medical services and "$32,831.22 in wage compensation." The trial court stayed this case until the Ohio Supreme Court's decision inHoleton v. Crouse (2001), 92 Ohio St.3d 115 (In this decision, the Ohio Supreme Court found that R.C. 4123.931, which governed the Bureau's subrogation rights, violates Sections 16 and 19, Article I of the Ohio Constitution).
 {¶ 4} After the trial court lifted the stay in this case, appellant, on November 19, 2001, filed a second amended complaint in which she alleged that she was, pursuant to Selander v. ErieIns. Co. (1999), 85 Ohio St.3d 541, and Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, reversed, in part, and limited, in part, Westfield v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, entitled to UIM coverage under two of her employer's insurance policies. One of these policies contained provisions governing "business auto" coverage ("business auto policy") and commercial general liability coverage ("CGL policy"). The second policy was an umbrella policy. Both policies were issued to appellant's employer, Toledo Visiting Nurse Corporation, by Buckeye. The Bureau was not named as a defendant in this complaint.
 {¶ 5} Buckeye answered and designated the following as one of its defenses:
 {¶ 6} "36. If UM/UIM coverage is extended by operation of law, the Plaintiff is excluded from coverage as she was not operating a vehicle in the scope of the named insured's business."
 {¶ 7} On April 8, 2002, Buckeye filed a motion for summary judgment and delineated the following bases for its motion: (1) the business auto policy and the CGL policy did not provide UIM coverage; (2) the "You" in the business auto policy and the CGL policy were not ambiguous (as compared to the "You" inScott-Pontzer) because the policy also named an individual; (3) appellant failed to provide Buckeye with "prompt notice" of her claim as required under the business auto policy; (4) appellant was not entitled, pursuant to Selander, to UIM coverage under the CGL policy because, at the time of the accident, she was not in a covered auto and was not acting in the course and scope of her employment; (5) the CGL policy was not an automobile or motor vehicle policy under R.C. 3937.18; (6) appellant was not afforded UIM coverage under Coverage A of the umbrella policy because it was excess coverage; specifically, Buckeye argued that appellant was not covered under the primary policy and could not, therefore, be covered under Coverage A; (7) appellant was not afforded UIM coverage under Coverage B of the umbrella policy because she was not acting within the scope of her employment at the time of the accident; (8) the umbrella policy expressly excludes UIM coverage and is not a motor vehicle policy subject to R.C. 3937.18; and (9) appellant failed to comply with the "prompt notice" provision in the umbrella policy.
 {¶ 8} In her combined memorandum in opposition to Buckeye's motion for summary judgment and her own motion for summary judgment, appellant maintained, in essence, that the "covered auto" provisions in the business auto policy and the CGL policy were not determinative in a Scott-Pontzer case. Appellant also contended that the addition of a named individual did not render "You" unambiguous in either the business auto policy or the CGL policy. She further claimed that, under Scott-Pontzer, UIM coverage arose by operation of law under the business auto and CGL policy and under the umbrella policy. In making this argument, appellant's trial counsel stated that appellant's injuries occurred outside the scope of her employment. Finally, counsel for appellant argued that Buckeye failed to demonstrate that it was actually prejudiced by appellant's alleged failure to provide the insurer with late notice.
 {¶ 9} On November 14, 2002, the trial court granted summary judgment to Buckeye, finding that before appellant was entitled to UIM coverage pursuant to Scott-Pontzer under the business auto policy, she had to be operating a motor vehicle covered under her employer's policy. Because she was driving her personal motor vehicle when the accident occurred, the trial court concluded that she was not "an insured under the business auto policy." The lower court further determined that appellant was not afforded any coverage (including UIM coverage obtained by operation of law) under either the CGL policy or the umbrella policy because she was not acting within the scope of her employment at the time of the accident. Thus, the trial court denied appellant's motion for summary judgment and granted Buckeye's motion for summary judgment.
 {¶ 10} On November 20, 2002, appellant filed a motion for reconsideration of the court's decision on the motions for summary judgment. In support of this motion, appellant asked the trial court to take judicial notice of copies of documents issued by the Ohio Bureau of Workers Compensation. These documents indicated that appellant's claim for medical expenses for a "sprained neck" was allowed, and that the sprained neck resulted from a motor vehicle collision that occurred on July 12, 1996. Appellant also filed and relied on her deposition, which was taken on May 3, 1999, but never filed in the trial court until after the grant of summary judgment to Buckeye. In that deposition, appellant indicated that, as a visiting nurse, she was driving to the location of her first assigned case on the day when the accident occurred.
 {¶ 11} On April 2, 2003, the Bureau voluntarily dismissed, without prejudice, its counterclaim against appellant. On May 27, 2003, the trial court's judgment denying appellant's motion for reconsideration was journalized. In his judgment, the trial judge noted that all of appellant's arguments in support of her motion for summary judgment and in opposition to Buckeye's motion for summary judgment denied that, in order to recover under the Buckeye insurance policies, she was required to be acting within the scope of her employment at the time of the May 12, 1996 accident. The court found that appellant waived the contention that she was acting within the scope of her employment and denied her motion for reconsideration.
 {¶ 12} On Jun 23, 2003, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B)(1), Civ.R. 60(B)(2) and Civ.R. 60(B)(5). Appellant then realized, however, that the trial court's grant of summary judgment to Buckeye was an interlocutory order and asked the trial court to consider this second motion as another motion for reconsideration.
 {¶ 13} The second motion for reconsideration was supported by the affidavit of appellant's trial counsel, who assumed responsibility for this case in 2002. Trial counsel averred that she was unaware of appellant's May 3, 1999 deposition and, consequently, relied solely on Scott-Pontzer in arguing that her client was provided coverage under the Buckeye policies. In addition, appellant argued that Buckeye either "misrepresented" the facts of this case in its motion for summary judgment or was mistaken as to the fact that the collision occurred during the scope of appellant's employment. Appellant also filed the Bureau's certified orders. These orders, in combination with her application for workers compensation benefits, appear to establish that appellant received a work-related injury in a motor vehicle accident on July 12, 1996.
 {¶ 14} On July 23, 2003, Buckeye filed a memorandum in opposition to appellant's second motion for reconsideration. Appellant argued, inter alia, that, pursuant to Ferrando v.Auto-Owner Mut. Ins. Co. (2002), 98 Ohio St.3d 186, appellant's four and one-half year delay in providing notice was unreasonable and, as a result, gave rise to a presumption of prejudice against the insurer. Buckeye maintained that appellant failed to rebut this presumption with evidence that the delay was not prejudicial to Buckeye; therefore, it was entitled to summary judgment as a matter of law. Buckeye also asked the common pleas court to render its November 14, 2002 grant of summary judgment a final, appealable order by adding the certifying language of Civ.R. 54(B).
 {¶ 15} In its September 3, 2003 decision, the trial court engaged in a partial reconsideration of its November 14, 2002 order by addressing the prompt notice question. In assuming, arguendo, that appellant was injured while acting within the scope of her employment, the court below, in reliance onFerrando, found that a four and one-half year delay in notifying Buckeye of the accident was unreasonable and, therefore, created a presumption of prejudice. The court then determined that appellant failed to offer any evidence to rebut this presumption. Further, the court granted Buckeye's motion for certification and determined that there was "no just cause for delay." This appeal followed.
 {¶ 16} Appellant asserts the following assignments of error:
 {¶ 17} "I. Pursuant to Westfield v. Galatis, the trial court erred in ruling that appellant does not qualify as an insured for the underinsured motorist coverage that arises by operation of law under the business auto and umbrella/excess policies because appellant was in the course and scope of her employment at the time of her automobile accident."
 {¶ 18} "II. Pursuant to Westfield v. Galatis, the trial court erred in denying appellant's first motion to reconsider its November 14, 2002 interlocutory order as appellant submitted evidence that she was in the course and scope of her employment which overcame appellee's continual denial of the same."
 {¶ 19} "III. Pursuant to Westfield v. Galatis, the trial court erred in denying appellant's second motion to reconsider its November 14, 2002 interlocutory order because:
 {¶ 20} "A. Appellant produced uncontroverted evidence that her employer certified that she was in the course and scope of her employment at the time of her accident;
 {¶ 21} "B. The interests of justice requires that Westfieldv. Galatis be followed; and
 {¶ 22} "C. Appellant did not breach any notice provisions within appellee's policies as appellee was provided notice of appellant's uninsured claim and consented to settlement with the tortfeasor prior to the accrual of her underinsured claim."
 {¶ 23} On appeal, appellant abandons her claim for UIM coverage under the CGL insurance policy. Thus, our discussion of the merits of appellant's arguments shall relate only to the Buckeye business auto policy and umbrella policy.
 {¶ 24} Because they are interrelated, we shall consider appellant's Assignments of Error Nos. II and III(A) together. In these assignments, appellant contends, in essence, that the trial court erred in failing to reconsider the issue of whether she was injured during the scope and course of her employment.
 {¶ 25} Pursuant to Civ.R. 54(B), interlocutory orders "are subject to revision at any time before the entry of judgment adjudicating the claims and the rights and liabilities of all the parties." Thus, a motion for reconsideration is the appropriate procedural vehicle to employ when seeking relief from an interlocutory judgment. Drillex, Inc. v. Lake Cty. Bd. OfComm'r (2001), 145 Ohio App.3d 384, quoting Pitts v. Dept. ofTransp. (1981), 67 Ohio St.2d 378, 379, fn. 1. Because a trial court has plenary power in ruling on a motion for reconsideration, we cannot reverse its judgment absent an abuse of discretion. Vanest v. Pillsbury Co. (1997),124 Ohio App.3d 525, 535. An abuse of discretion occurs when a trial court's judgment is more than just an error of law; rather, in reaching its decision, the trial court's attitude must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 26} In the case before us, the trial court's order granting summary judgment to Buckeye was an interlocutory order because both the tortfeasor and the Bureau were still parties to the case. The sole issue in appellant's Assignments of Error Nos. II and III(A) is, therefore, whether the trial court abused its discretion in finding that appellant waived her right to argue (and offer evidence in support of that argument) that she was acting within the scope of her employment at the time of the accident.
 {¶ 27} To repeat, the summary judgment granted to Buckeye was an interlocutory order that was modifiable at any time before the entry of final judgment. Thus, we are of the opinion that neither waiver nor invited error, as argued by Buckeye, are applicable in this particular instance. Rather, for the following reasons, we conclude that the trial court did abuse its discretion in failing to reconsider its grant of summary judgment to Buckeye.
 {¶ 28} At the time Buckeye filed its motion for summary judgment, the Bureau was still a party to this case. In its complaint seeking subrogation, the Bureau based its claim on monies paid to appellant "as a result of the injury" alleged in her complaint. The injury alleged in appellant's complaint resulted from the motor vehicle collision on July 12, 1996. While pleadings are not evidence, Hoaglin Holdings, Ltd. V. GoliathMortgage, Inc., 8th Dist. No. 2004-Ohio-3473, at ¶ 17, the Bureau's pleadings coupled with appellant's complaint provided Buckeye and the trial judge with notice of the fact that the accident occurred while appellant was acting within the scope of her employment.
 {¶ 29} Moreover, and of greater importance, is the fact that appellant offered evidence in support of her second motion for reconsideration that apparently establishes that she was injured in the July 12, 1996 accident while acting in scope of her employment. This court has found, on at least one other occasion, that when presented with additional evidence on a motion for reconsideration, a trial court does not abuse its discretion in reconsidering its interlocutory decision on a motion for summary judgment. See D'Agastino v. The Uniroyal-Goodrich Tire Co.
(1998), 129 Ohio App.3d 281. We conclude that the situation before us is akin to the situation in D'Agastino. Thus, we find that, based on the evidence offered by appellant, the trial court's attitude in failing to reconsider its interlocutory order on the question of whether appellant was acting within the scope of her employment was unreasonable. Accordingly, appellant's Assignments of Error Nos. II and III (A) are found well-taken.
 {¶ 30} In her Assignments of Error Nos. I and III (B), appellant asks this court to find that she was acting within the scope of her employment and to address the dispositive issues in this cause under the law set forth in Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849. While the undisputed evidence offered through the Bureau's certified records and the affidavit of the attorney representing appellant in pursuing her claim for workers' compensation appears to demonstrate that appellant was acting within the scope of her employment when she was injured, and that, therefore, Galatis
is applicable to this case, the trial court never actually considered the "scope of employment" issue or the effect that it might have on all other relevant issues, e.g., whether appellant was operating a "covered auto" within the meaning of the Buckeye business auto and umbrella policies. Because we lack the authority to address these issues for the first time on appeal, we must decline to make these determinations on appeal. See Section 3(B)(2), Article IV of the Ohio Constitution (Courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *.") Therefore, we must remand this case to the trial court for consideration, and appellant's Assignments of Error Nos. I and III(B) are not ripe for review.
 {¶ 31} In appellant's Assignment of Error No. III (C), she contends that the trial court erred in granting summary judgment to Buckeye on the issue of whether appellant provided Buckeye prompt notice of the accident.
 {¶ 32} A review of the trial court's ruling on a motion for summary judgment is de novo, and thus, we apply the same standard as the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 33} The pertinent portion of the Buckeye business auto policy reads:
 {¶ 34} "Section IV-Business Auto Conditions
 {¶ 35} "A. * * *
 {¶ 36} "1. * * *
 {¶ 37} "2. Duties in the event of accident, claim, suit or loss.
 {¶ 38} "a. In the event of `accident', claim, `suit' or `loss', you must give us or our authorized representative prompt notice of the `accident' or `loss'."
 {¶ 39} The relevant provision in the umbrella policy states:
 {¶ 40} "If an accident, circumstance or loss happens which is likely to result in a claim or if a claim has been [sic] under this policy, you or someone in your organization must:
 {¶ 41} "1. Notify us or our agent in writing what happened as soon as possible."
 {¶ 42} In its motion for summary judgment, Buckeye relied on these provisions to argue that a four and one-half year delay in apprising Buckeye of her claim was, as a matter of law, unreasonable, because it deprived the insurance company of the "meaningful opportunity to investigate the accident, get reserves for future claims, determine premiums, and assert its subrogated claim against the tortfeasor."
 {¶ 43} In her various memoranda throughout the proceedings below, appellant made several arguments supporting her position that summary judgment should not be granted to Buckeye on the ground that she failed to provide prompt notice of the July 12, 1996 accident. These included: (1) her UIM claim had not yet accrued because the tortfeasor's liability policy limits were not exhausted; (2) UIM coverage arose by operation of law; therefore, notice provisions "do not exist" for such coverage; (3) the prompt notice requirements in the business auto and umbrella policies were satisfied because her case against the tortfeasor was still pending when she first notified Buckeye of her claim; and (4) Buckeye was not prejudiced by any late notice because it was a party to the suit. Because the tortfeasor remained a party to this suit throughout the proceedings below, we find that appellant's assignment of Error No. III(C) has merit.
 {¶ 44} The purposes of a prompt notice clause include, among other things, allowing the insurer to be aware of the occurrence early enough to have a meaningful opportunity to investigate, to provide it with the ability to control the potential litigation, to protect its interests, to maintain reserves, to evaluate claims, to defend against fraudulent claims, and to pursue its subrogation interests. Ormet Primary Aluminum Corp. v. EmployersIns. of Wassau, 88 Ohio St.3d 292, 302, 200-Ohio-330.
 {¶ 45} In recognition of these purposes, the Ohio Supreme Court released, on October 15, 2002, its decision in Ferrando.
In that case, the court set forth a two-step process to be used in "late notice" insurance cases. First, a court is required to determine whether a breach of a prompt notice clause occurred because notice was not provided within a reasonable time. Id., at ¶ 92. Whether the amount of time is reasonable depends upon "all the surrounding facts and circumstances." Id., citing Ruby v.Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, syllabus. However, an unexcused significant delay can be unreasonable as a matter of law. Erdmann v. The Kobacher Co., 6th Dist. No. L-02-1184, 2003-Ohio-5677, at ¶ 24, citing Ormet PrimaryAluminum Corp. v. Employers Ins. Of Wassau (1999),88 Ohio St.3d 292, 300, 2000-Ohio-330.
 {¶ 46} If a prompt notice provision is breached, a trial court must then decide if the insurer was prejudiced so that underinsured motorist and/or UIM coverage must be forfeited.Ferrando v. Auto-Owner Mut. Ins. Co., 98 Ohio St.3d 186, at ¶ 89. "Unreasonable notice gives rise to the presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut." Id. at ¶ 90. The evidence to be offered to rebut the presumption goes to the purposes of notice provisions in insurance contracts. Id. at ¶ 70.
 {¶ 47} As applied to this case, it is undisputed that appellant first gave notice of the accident to Buckeye on February 15, 2001. Thus, appellant did not provide notice to Buckeye until four and one-half years after the accident and one year and eight months after the release of Scott-Pontzer. Based on these facts, this court would normally agree with the trial court and find that, at the least, this delay was unreasonable and thereby created a rebuttable presumption of prejudice to Buckeye. However, one fact in this case makes it distinguishable from those cases relied upon by courts in finding an unreasonable delay. Here, the tortfeasor was still a party to the case throughout the proceedings below. Thus, it is difficult for this court to ascertain how the purposes of prompt notice could be thwarted by appellant's delay in notifying Buckeye of her accident. For example, Buckeye still has the opportunity to investigate this two car accident involving only one tortfeasor, to control the litigation, to maintain its reserves, and to prevent fraud. Furthermore, Buckeye's subrogation rights were not compromised by the delay in giving notice. We therefore conclude that, under all of the facts and circumstances of this case, the delay in providing notice to Buckeye was not unreasonable, and appellant's Assignment of Error III(C) is found well-taken.
 {¶ 48} On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Lucas Court of Common Pleas is reversed and remanded for further proceedings consistent with this judgment. Buckeye Union Insurance Company is ordered to pay the costs of this appeal. See App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Singer, J., Concur.