DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Adolph Johnson Son Co. ("AJS") has appealed from the judgment of the Summit County Court of Common Pleas which awarded Plaintiff-Appellee Spano Brothers Construction Co., Inc. ("Spano") damages in the amount of $43,502.56. This Court affirms.
 I {¶ 2} On March 8, 2002, Spano filed a complaint against AJS and Sheetz, Inc. ("Sheetz"), alleging a breach of contract, a violation of the Ohio *Page 2 
Prompt Payment Act and unjust enrichment. Spano voluntarily dismissed Sheetz on January 17, 2003.
 {¶ 3} On September 17, 2003, Spano filed a motion for summary judgment. In its motion, Spano alleged that AJS had terminated Spano under the parties' contract but had failed to pay Spano for the work it had completed. On October 29, 2003, the trial court granted Spano's motion for summary judgment on the breach of contract claim and denied the motion for summary judgment on Spano's remaining claims and issues. The court then ordered the parties to mediation on the issue of damages.
 {¶ 4} On November 17, 2003, AJS filed a motion for reconsideration or in the alternative a request for Civ.R. 54(B) certification. AJS's motion requested that the court reconsider its decision in light of recently filed deposition testimony. The motion requested that the court in the alternative reduce the October 29, 2003 order to a final judgment pursuant to Civ.R. 54(B), so that it could be immediately appealed. On December 18, 2003, the trial court overruled the motion for reconsideration and granted the motion for Civ.R. 54(B) certification.
 {¶ 5} AJS timely appealed, and this Court dismissed the appeal for lack of a final, appealable order. Despite the trial court's addition of the requisite 54(B) language, this Court stated, "[a]n order determining liability but deferring the issue of damages is generally not a final appealable order [.]" See Spano Bros. *Page 3 Constr. Co., Inc. v. Adolph Johnson Son Co., 9th Dist. No. 21883. The case then proceeded to a jury trial on September 27 and 29, 2005. Because the trial court had granted Spano's motion for summary judgment on the breach of contract claim, the sole issue presented at trial was the amount of damages for that claim.
 {¶ 6} On September 29, 2005, the jury awarded Spano $43,502.56 in damages. The trial court entered final judgment reflecting that verdict on October 4, 2005. AJS timely appealed that judgment, but this Court again dismissed the appeal. In that matter, this Court found that Spano had outstanding claims remaining and that the trial court's entry did not contain Civ.R. 54(B) language. See Spano Bros. Constr. Co., Inc. v.Adolph Johnson Son Co., 9th Dist. No. 22943, 2006-Ohio-4083. Following our dismissal, the trial court dismissed Spano's remaining claims. AJS has again timely appealed, asserting three assignments of error.
 II Assignment of Error Number One "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF SPANO BROTHERS CONSTRUCTION CO., INC."
 {¶ 7} In its first assignment of error, AJS has asserted that the trial court erred in granting summary judgment on the liability portion of Spano's breach of contract claim. Specifically, AJS has asserted that a question of fact remains regarding whether AJS terminated Spano under the contract. We disagree. *Page 4 
 {¶ 8} An appellate court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated;
 (2) the moving party is entitled to judgment as a matter of law; and
 (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 9} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 10} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a *Page 5 
genuine dispute over the material facts. Id. See, also, Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} Pursuant to Civ.R. 56(C):
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 12} Generally, the elements for a breach of contract are that a plaintiff must demonstrate by a preponderance of the evidence (1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant failed to fulfill his obligations, and (4) that damages resulted from this failure. Lawrence v. Lorain Cty. CommunityCollege (1998), 127 Ohio App.3d 546, 548-49. In support of its claim, Spano relied upon the following contract provision:
 "This agreement may be terminated for material default or any other reason as determined by the Contractor. In the event of termination payment shall be only for work performed to the date of termination."
The parties agree that the above provision is unambiguous. However, they disagree over whether there exists a genuine issue of material fact based upon the plain meaning of the above provision.
 {¶ 13} In support of its motion for summary judgment, Spano presented the following evidence. Spano and AJS had numerous disputes about scheduling on the job site. Specifically, AJS required that Spano be onsite every day to *Page 6 
perform work while Spano preferred to wait for work to accumulate and then perform that work all in one day. Spano was repeatedly notified that its actions were not permissible under the contract, but Spano continued its actions and did not appear at the site every day. On July 18, 2001, Spano employees met with employees of AJS and a Sheetz employee. During that meeting, Spano was told to appear on the job site the next morning. Spano did not appear the next morning. That same day, AJS had another subcontractor on site completing the tasks Spano was obligated to perform under the contract. Upon arriving at the site the following day, Spano saw the new subcontractor and removed its equipment from the job site.
 {¶ 14} AJS has relied upon the above actions by Spano to assert that Spano abandoned the contract. This Court has previously discussed abandonment in the context of a breach of contract action.
 "Parties to a contract may, by mutual consent or conduct, abandon a contract previously entered. Accordingly, mutual abandonment of a contract need not be express, but may be inferred from the conduct of the parties and attendant circumstances. See Dickson v. Wolin (App. 1934), 18 Ohio Law Abs. 107; see, also, 17 American Jurisprudence 2d (1964, Supp. 1990), Contracts, Section 484. Where one party effectively abandons a contract, the other may assent to the abandonment, and so effect a dissolution of the contract by the mutual assent of both parties; in such a case, the parties are restored to their original positions, and may neither sue for breach nor compel specific performance." Bryant v. Richfield Properties (Sept. 5, 1990), 9th Dist. No. 14533, at *3.
AJS has asserted that Spano's actions clearly demonstrate abandonment and thereby preclude Spano from pursuing a breach of contract action. The sole *Page 7 
evidence before the trial court, however, undermines AJS's assertion that Spano was not terminated and instead abandoned the contract.
 {¶ 15} Effectively, AJS has argued that since it never used the phrase, "You are terminated," that it did not terminate Spano. We cannot agree with such an argument.
 {¶ 16} It is undisputed that the parties met to discuss Spano's performance on July 18, 2001. In his affidavit, Frank Spano averred that he received notice that Spano was being replaced on the job by another subcontractor the next day. Furthermore, in a letter dated July 18, 2001, Rick Stewart, the project manager for AJS, wrote as follows:
 "Spano Brothers Co. has continually broken the terms of our contract. In reference to the letter sent to you on June 25th, we will be bringing in someone else to complete the tasks that you have failed to complete and deduct the associated cost from your contract amount."
The earlier letter sent by AJS stated that if Spano could not "perform a future task at the time needed [AJS] will be forced to have another Contractor perform that task and it will be deducted from your contracted total." In addition, Spano placed into evidence the field notes taken by AJS's superintendent for the jobsite, Mark DiBell. For July 19, DiBell's notes read "Spano fired." In its brief, AJS has argued that DiBell lacked the authority to fire Spano. That issue has not been contested by Spano. However, it is undisputed that DiBell was on site on July 19, 2001 and that his notes are an accurate reflection of his perception of *Page 8 
events as he witnessed them on that day. That is, DiBell wrote that Spano had been fired based upon what he witnessed occur at the job site on July 19, 2001. Moreover, Stewart's notes read as follows for July 19, 2001: "At this time it was agreed to release Spano from the project." Finally, we note that Spano did not remove its equipment from the job site until July 20, 2001 and did not receive payment for the work it had completed.
 {¶ 17} Based upon this evidence, we find that Spano met its initial burden of demonstrating that it was terminated under the contract and that AJS had not made payments under the unambiguous provision of the contract detailed above.
 {¶ 18} In an effort to meet its reciprocal burden, AJS relied upon the affidavit of Paul Johnson, the President of AJS and supporting documents. Johnson's affidavit, however, reiterates the facts established by Spano. In his affidavit, Johnson states as follows:
 "Affiant says that a meeting took place on July 18 at which time Spano Bros. committed to be on the job site the following day to complete necessary work. Spano failed to appear at the job site on July 19 to complete the work they had promised at the meeting the day before. Affiant brought in other contractors to complete the work that Spano failed to perform. Thereafter, Spano loaded its equipment and left the job and performed no further work required under the terms of the contract."
Johnson's statements do not contradict the evidence produced by Spano. Spano admitted that a meeting took place on July 18 and that it agreed to complete additional work. However, Spano also introduced the above uncontradicted letter, *Page 9 
dated July 18, which notified Spano that it was being replaced on the job by another subcontractor.
 {¶ 19} Accordingly, AJS produced no evidence to contradict the evidence produced by Spano that it was terminated by letter dated July 18, 2001. In addition, it is undisputed that Spano did not remove its equipment from the job site until July 20, 2001. Accordingly, there exists no genuine issue of material fact regarding whether Spano was terminated. The trial court, therefore, did not err in entering summary judgment in favor of Spano. The sole evidence before the trial court demonstrated that Spano was terminated and had not abandoned the contract. AJS's first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT ERRED IN OVERRULING THE MOTION FOR RECONSIDERATION OF DEFENDANT ADOLPH JOHNSON SON CO."
 {¶ 20} In its second assignment of error, AJS has asserted that the trial court erred in denying its motion for reconsideration. Specifically, AJS has argued that the trial court should have considered the deposition testimony of a Sheetz employee that was filed after the trial court granted summary judgment. We disagree.
 {¶ 21} "While motions for reconsideration are not expressly or impliedly allowed in the trial court after a final judgment, interlocutory orders are the proper subject of motions for reconsideration." State v. Ford, 9th Dist. No. 23269, 2006- *Page 10 
Ohio-6961, at ¶ 5, citing State v. Ward, 4th Dist. No. 03CA2,2003-Ohio-5650, at ¶ 11; see also, Pitts v. Ohio Dept. of Transp.
(1981), 67 Ohio St.2d 378, 379. The trial court's determination of a motion for reconsideration will not be disturbed on appeal absent an abuse of discretion. Helman v. EPL Prolong, Inc. (2000),139 Ohio App.3d 231, 241. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 22} In support of its argument, AJS relies upon D'Agastino v.Uniroyal-Goodrich Tire Co. (1998), 129 Ohio App.3d 281 and Brown v.Performance Auto Center, Inc. (May 19, 1997), 12th Dist. No. CA96-10-205. We find both cases distinguishable. In D Agastino, the appellate court found no abuse of discretion by the trial court when the trial court considered evidence contained in a motion for reconsideration. D'Agastino, 129 Ohio App.3d. at 288.D'Agastino contains no discussion regarding why the motion for reconsideration was filed and contains no analysis of why the evidence was properly considered by the trial court. Brown is similar to D`Agastino in that it finds no abuse of discretion by the trial court in ruling on a renewed motion for summary judgment and considering the new evidence contained therein. Brown at *9. Like *Page 11 D'Agastino, Brown contains no discussion regarding why the trial court did not abuse its discretion in granting the motion for reconsideration. Regardless of their applicability, however, neither case stands for the proposition that a trial court is obligated to grant a motion for reconsideration.
 {¶ 23} In its motion, AJS sought to introduce the deposition testimony of Shaun McCauley, Sheetz Project Superintendent. In its brief, AJS asserts that McCauley's deposition could not have been taken during the schedule set by the trial court because he resides out of state. AJS, however, provides no citation to the record where this argument was made to the trial court. Moreover, a review of the record indicates that AJS provided the trial court with no rationale for failing to timely present McCauley's deposition.
 {¶ 24} In addition to its failure to provide a reason for not timely taking McCauley's deposition, AJS also ignores that the trial court set its deadline for filing a responsive pleading on September 17, 2003. In that order, the trial court required AJS to file its response by October 15, 2003. On that deadline date, AJS sought leave to extend its deadline until October 17, 2003. Despite that request for additional time, AJS did not assert that McCauley's deposition could not be taken or inform the trial court that it intended to take McCauley's deposition. Accordingly, as AJS presented no rationale for its failure to comply with the trial court's scheduling deadline, we find no abuse of discretion in the *Page 12 
trial court's denial of AJS's motion for reconsideration. AJS's second assignment of error lacks merit.
 Assignment of Error Number Three "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT SUBMITTING THE ISSUE OF BREACH OF CONTRACT TO THE JURY AND NOT ALLOWING ADOLPH JOHNSON TO SUBMIT EVIDENCE OF ITS OWN DAMAGES."
 {¶ 25} In its third assignment of error, AJS has asserted that the trial court erred in limiting the evidence presented during the damages-only trial. Specifically, AJS has argued that it should have been permitted to introduce evidence of its own damages caused by Spano's breach of the contract. We disagree.
 {¶ 26} As noted above, AJS has not argued that the parties' contract was ambiguous. As we have found that the contract was terminated, the plain language of the contract requires that Spano be paid for the "work performed to the date of termination." Nothing in the parties' contract permits AJS to offset this payment with a claim for damages. Moreover, AJS sought to introduce evidence of damages caused by Spano's alleged breach of the contract. AJS, however, did not file a breach of contract action or counterclaim against Spano, nor did AJS plead the affirmative defenses of setoff and recoupment. Accordingly, we find no error in the trial court's refusal to permit AJS to make such an argument during a damages-only hearing on Spano's claim. AJS's final assignment of error lacks merit. *Page 13 
 III {¶ 27} AJS's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 14 
SLABY, P. J. MOORE, J. CONCUR *Page 1