[Cite as *In re C.Q.*, 2020-Ohio-5531.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: C.Q. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J.<br><br>Case No. 2020 CA 00012<br><br>O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. A2019-0048 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 2, 2020 |
| APPEARANCES: | |

| | |
|---|---|
| For Appellee State of Ohio | For Appellant C.Q. |
| WILLIAM C. HAYES<br>Licking County Prosecutor<br><br>PAULA M. SAWYERS<br>Assistant Prosecuting Attorney<br>20 S. Second Street, Fourth Floor<br>Newark, Ohio  43055 | ANDREW RUSS<br>1000 Taylor Station Road, Suite G<br>Gahanna, Ohio  43230<br><br>Guardian Ad Litem<br><br>THOMAS J. ARCHER<br>85 North Third Street<br>Newark, Ohio  43055 |

For Mother T. Q.

BONNIE VANGELOFF
6400 Emerald Parkway
Dublin, Ohio  43016

*Hoffman, P.J.*

**{¶1}** Defendant-Appellant C.Q. appeals the judgment of the Licking County Common Pleas Court, Juvenile Division, adjudicating him to be delinquent by reason of rape (R.C. 2907.02(A)(2)) and committing him to the Ohio Department of Youth Services for one year, with the commitment held in abeyance pending Appellant's performance on sex offender probation. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On January 22, 2019, Appellant and the victim purchased food at White Castle, then returned to Appellant's house to eat and hang out in his bedroom. The couple had been dating for a few months. They began kissing. Appellant tried to take the victim's clothes off. She told him to stop. Appellant then removed the victim's pants and threw them across the room. When she tried to retrieve her pants, he pulled her from the loveseat to the floor. The victim was on the floor on her back, with Appellant on top of her. Appellant began taking his own clothes off. Appellant put his fingers inside her vagina. She believed he put his penis inside her. She repeatedly told Appellant to stop. Appellant did not stop until she told Appellant her brother-in-law was there to pick her up. She put on her pants to leave, and Appellant said, "I'm sorry for forcing you."

**{¶3}** The victim reported the incident to her R.O.T.C. teacher. The victim was interviewed by a social worker and Detective Steve Vanoy of the Newark Police Department. Det. Vanoy suggested she contact Appellant via Facebook. Appellant had previously messaged her, asking why she was not in school the day after the incident. In the messages exchanged between the pair, Appellant apologized for his behavior.

**{¶4}**   A teacher at Newark High School noticed Appellant crying in class. Appellant told the teacher he was with a girl "doing stuff," and when she asked him to stop, he did not stop.  Tr. 147.

**{¶5}**   On January 28, 2019, Det. Vanoy interviewed Appellant.  The initial meeting occurred in the assistant principal's office at Newark High School.  Det. Vanoy informed Appellant of his Miranda rights.  The detective asked Appellant if he understood his rights, and Appellant responded, "Yes."  Tr. 15; State's Exhibit A.  Appellant was arrested and taken to the police station.

**{¶6}**   At the station, Appellant admitted he made a mistake.  He stated he felt sorry for the victim because what he had done to her affected her ability to attend school. Appellant stated he hated himself for it, and feared his parents would hate him.

**{¶7}**   Appellant told Det. Vanoy he had dated the victim or a month and a half. Two or three times prior to the date in question, the couple engaged in some type of sexual behavior.  He stated the victim had touched his penis with her hands and her mouth, and he had touched her breasts and vagina with his hands and mouth, all of which was consensual.

**{¶8}**   On the date of the offense, Appellant stated he began "messing" with the victim.  He stated the contact became more intimate than usual, and she told him to stop. He stated he did not stop but kept going, with his penis getting closer to her vagina.  He admitted inserting two fingers in her vagina and thrusting them in and out, despite her repeated requests to stop.  He admitted he inserted the tip of his penis into her vagina. He told the detective on one prior occasion, his penis had gone inside her, but they had stopped.  He did not know why she told him to stop on this occasion, but Appellant felt

because she did not like it the other time, she decided to say something this time. Appellant estimated the victim told him to stop five or six times, but he did not stop. Appellant stated the victim was visibly upset, and he pulled her back to the floor despite her attempts to get up.  He finally stopped when she had to leave.

{¶9}   Appellant told the detective the victim broke up with him by text.  He showed Det. Vanoy the Facebook messages they exchanged, in which Appellant told the victim he was evil and hated himself because he felt he had forced himself on her.

{¶10} Appellant was charged with delinquency by reason of rape in violation of R.C. 2907.02(A)(2).  He moved to suppress his statement to the police on the basis his Miranda rights were violated and his statement was not voluntary.   Following an evidentiary hearing, the trial court overruled the motion to suppress.

{¶11} The case proceeded to an adjudicatory hearing in the Licking County Common Pleas Court, Juvenile Division.  The court found Appellant delinquent by reason of rape at the conclusion of the hearing.  The matter was continued for disposition.

{¶12} After the dispositional hearing, the trial court committed Appellant to the Department of Youth Services for one year, with the entire commitment held in abeyance pending successful completion of sex offender probation.   After considering the psychological evaluation and risk assessment of Appellant which was completed prior to the hearing, the trial court ordered Appellant to register as a Tier I Sex Offender.

{¶13} It is from the February 12, 2020 judgment of the trial court Appellant prosecutes this appeal, assigning as error:

I. THE JUVENILE COURT ERRED WHEN IT OVERRULED C.Q.'S MOTION TO SUPPRESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

II. THE TRIAL COURT ERRED AS IT MISAPPLIED OHIO'S RAPE SHIELD STATUTE IN NOT ALLOWING DEFENDANT'S TRIAL COUNSEL TO CROSS EXAMINE THE ACCUSER ON ISSUES OF CONSENT AND SEXUAL HISTORY AS BETWEEN THE DEFENDANT AND HIS ACCUSER IN VIOLATION OF THE DEFENDANT'S RIGHT TO CONFRONT HIS ACCUSER UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10; EVID. R. 608(B); O.R.C. 2907.02(D),(E).

III. THE COURT'S FINDING OF DELINQUENCY OF RAPE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AS A MATTER OF LAW AS THE STATE FAILED TO PROVE EVERY ELEMENT OF RAPE BEYOND A REASONABLE DOUBT.

IV. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED C.Q. AS A TIER I JUVENILE SEX OFFENDER REGISTRANT, IN VIOLATION OF C.Q.'S RIGHT TO DUE PROCESS.

V. C.Q. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO RAISE A RULE 29 MOTION AT THE END OF THE STATE'S CASE AND WHEN COUNSEL FAILED TO OBJECT TO THE IMPROPER AND UNCONSTITUTIONAL CLASSIFICATION OF C.Q.

I.

{¶14} In his first assignment of error, Appellant argues the court erred in overruling his motion to suppress his confession to police. He argues the statement was taken in violation of *Miranda v. Arizona,* 384 U.S. 436 (1979).

{¶15} The Fifth Amendment to the United States Constitution guarantees no person in a criminal case shall be compelled to be a witness against himself, and the Sixth Amendment guarantees the accused shall have the assistance of counsel. *Miranda*, 384 U.S. at 442, 86 S.Ct. 1602, 16 L.Ed.2d 694. The inherently coercive nature of custodial interrogation heightens the risk a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can "undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely." *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), *quoting Miranda* at 467, 86 S.Ct. 1602; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). That risk is even more troubling and acute when, as in the instant case, the subject of the interrogation is a juvenile. *J.D.B.* at 269.

{¶16} In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Id.* In broad terms, *Miranda* held the State may not use a

defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. The Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id*. at 469, 86 S.Ct. 1602.

**{¶17}** If custodial interrogation continues in the absence of an attorney after a police officer advises a suspect of his rights, the State must demonstrate by a preponderance of the evidence the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel" before speaking to the police. *Miranda*, 384 U.S. at 475, 86 S.Ct. 1602.  A court may not presume a valid waiver either from the suspect's silence after warnings are given or from the fact the suspect eventually confessed. *Miranda* at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694. Rather, the record must show the accused was offered counsel but intelligently and understandingly rejected the offer.  *Id.*   If the state does not satisfy its burden, "no evidence obtained as a result of interrogation can be used." *Id*. at 479, 86 S.Ct. 1602.

**{¶18}** To determine whether a suspect knowingly, intelligently, and voluntarily waived his Miranda rights, courts examine the totality of the circumstances. *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988). When the suspect is a juvenile, the totality of the circumstances includes "the juvenile's age, experience, education, background, and intelligence" as well as his "capacity to understand the warnings given

him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). A juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary. *See In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 96.

**{¶19}** Appellant argues he did not expressly waive his rights, but merely answered in the affirmative when he was asked if he understood his rights. He argues based on his age, immaturity, and the absence of a parent during questioning, his waiver of his Miranda rights was not voluntarily, knowingly, and intelligently made.

**{¶20}** The fact a defendant did not sign a rights waiver form or expressly state he was waiving his rights is not controlling. *State v. Fowler,* 5th Dist. Tuscarawas No. 2015 AP 0054, 2016-Ohio-1209, ¶ 20. A suspect need not be asked directly whether he or she understands the Miranda warnings before an understanding waiver of Miranda rights may be inferred from the totality of the circumstances. *State v. Lather,* 110 Ohio St.3d 270, 2006-Ohio-4477, 853 N.E.2d 279, ¶ 5 (2006). However, where a suspect speaks freely to police after acknowledging he understands his rights, a court may infer the suspect implicitly waived his rights. *State v. Murphy,* 91 Ohio St.3d 516, 2001-Ohio-112, 747 N.E.2d 765 (2001)

**{¶21}** Appellant was read his Miranda rights and asked if he understood them. Appellant answered in the affirmative. The questioning lasted only around an hour. Appellant was 15 ½ years old at the time, and a high school student. Appellant's father was a retired police officer. Although Appellant was emotional during the interview, the trial court found his emotion was reasonable under the circumstances and did not render

the statement involuntary. The trial court noted there was no evidence of deprivation or mistreatment by the police. While police did ask the victim to text Appellant in order to obtain information about the crime, the record demonstrates Appellant voluntarily chose to talk to police and discussed the crime at length before discussing the messages he exchanged with the victim. We find the trial court did not err in overruling Appellant's motion to suppress his statement to police.

**{¶22}** The first assignment of error is overruled.

II.

**{¶23}** In his second assignment of error, Appellant argues the court erred by failing to allow him to cross-examine the victim on past sexual activity between herself and Appellant, based on the rape shield law.

**{¶24}** R.C. 2907.02(D), commonly known as Ohio's Rape Shield Law, provides in pertinent part:

> (D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

**{¶25}** "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St. 3d 269, 271, 569 N.E.2d 1056 (1991).

**{¶26}** During cross-examination of the victim, counsel for Appellant asked her, "Do you recall telling the social worker that you and [C.Q.] would do something sexual every time you went over there?" Tr. 117. The State objected on the basis the questioning violated the rape shield law. The trial court sustained the objection.

**{¶27}** Although Appellant correctly argues R.C. 2907.02(D) allows evidence to be admitted concerning the victim's past sexual activity with the offender, it does so only to the extent the court finds the evidence is material to a fact at issue in the case. In his statement to police, Appellant admitted the sexual conduct he engaged in on January 22, 2019, was not consensual, even though they had engaged in consensual sexual behavior in the past. Once the trial court determined Appellant's statement to police was admissible, whether the victim consented on past occasions to sexual behavior with Appellant was not material to a fact at issue in the case, as consent was no longer at issue through Appellant's own admissions. Appellant instead focused his case on the lack of physical DNA evidence connecting Appellant to the victim, and the victim's statements she was not sure Appellant's penis entered her vagina.

**{¶28}** We find the trial court did not abuse its discretion in sustaining the State's objection to Appellant's questioning of the victim regarding past incidents of sexual activity.

**{¶29}** The second assignment of error is overruled.

III.

**{¶30}** In his third assignment of error, Appellant argues the court's finding he was delinquent by reason of rape is not supported by sufficient evidence.

**{¶31}** We apply the same standard of review for sufficiency of the evidence in juvenile delinquency adjudications as for adult criminal defendants. *In re T.R.*, 5th Dist. Guernsey No. 10CA000002, 2010-Ohio-4419, ¶ 11. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶32}** Appellant was found delinquent by reason of rape in violation of. R.C. 2907.02(A)(2), which provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶33}** R.C. 2907.01(A) defines sexual conduct:

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶34} The statement Appellant made to Det. Vanoy was admitted into evidence. In the statement, Appellant admitted on the date of the offense, he began "messing" with the victim. He stated the contact became more intimate than usual, and she told him to stop. He stated he did not stop but kept going, with his penis getting closer to her vagina. He admitted inserting his two fingers in her vagina and thrusting them in and out, despite her repeated requests to stop. He admitted he inserted the tip of his penis into her vagina. He told the detective on one prior occasion, his penis had gone inside her, but they had stopped. He did not know why she told him to stop on this occasion, but Appellant felt because she did not like it the other time, she decided to say something this time. Appellant estimated the victim told him to stop five or six times, but he did not stop. Appellant stated the victim was visibly upset, and he pulled her back to the floor despite her attempts to get up. He finally stopped when she had to leave. Appellant showed Det. Vanoy the Facebook messages they exchanged, in which Appellant told the victim he was evil and hated himself because he felt he had forced himself on her.

{¶35} The victim testified at trial that on January 22, 2019, she and Appellant purchased food at White Castle, then returned to Appellant's house to eat and hang out in his bedroom. The couple had been dating for a few months. They began kissing. Appellant tried to take her clothes off. She told him to stop. Appellant then removed her pants and threw them across the room. When she tried to retrieve her pants, he pulled her from the loveseat to the floor. She was on the floor on her back, with Appellant on top of her. Appellant began taking his own clothes off. Appellant put his fingers inside her vagina. She believed he put his penis inside her. She repeatedly told Appellant to

stop.  Appellant did not stop until she told Appellant her brother-in-law was there to pick her up.  She put on her pants to leave, and Appellant said, "I'm sorry for forcing you."

**{¶36}**  We find this evidence is sufficient to support the finding of delinquency by reason of rape.  Appellant argues his DNA was not found on the victim, and she was unclear in her statements to the authorities as to whether Appellant's penis penetrated her.  However, the trial court expressly found Appellant delinquent by reason of rape based on digital penetration.  Both Appellant's statement and the victim's testimony were consistent Appellant digitally penetrated her vagina while she repeatedly asked him to stop.

**{¶37}**  The third assignment of error is overruled.

IV.

**{¶38}**  In his fourth assignment of error, Appellant argues the court erred in ordering him to register as a Tier I sex offender.

**{¶39}**  R.C. 2152.83(B) allows the trial court in the instant case to hold a hearing on whether or not Appellant should be labeled as a juvenile sex offender registrant:

> (B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:

(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.

(b) The child was fourteen or fifteen years of age at the time of committing the offense.

(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.

{¶40} Which tier a juvenile sex offender registrant is placed in rests within the juvenile court's discretion. *In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 20 (2012). An abuse of discretion implies the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St. 3d 217, 450 N.E.2d 1140 (1983).

{¶41} In the instant case, the State recommended Appellant be classified as a Tier II registrant. Counsel for Appellant concurred with the State's recommendation. However, after listening to the statements made at the hearing and reviewing the psychological evaluation and risk assessment filed in the case, the trial court classified Appellant as a Tier I offender, specifically finding, "Youth is classified as a TIER I juvenile sex offender registrant because he is at risk of further offending, he lacks insight, shows no remorse, exhibits no victim empathy and is reluctant to change behavior." Judgment entry, 2/12/20.

{¶42} Appellant argues the reason he displayed no remorse or empathy is because he was considering the possibility of an appeal, and therefore on the advice of counsel chose not to make further admissions to Dr. Miller, who conducted his evaluation. Appellant unsuccessfully made this same argument to the trial court. The trial court was in a better position than this Court to view the demeanor of Appellant throughout the proceedings. Further, the psychological evaluation and risk assessment filed under seal with this Court supports the trial court's findings. Based on the record before this Court, we find the trial court did not abuse its discretion in classifying Appellant as a Tier I offender.

{¶43} The fourth assignment of error is overruled.

V.

{¶44} In the fifth assignment of error, Appellant argues his trial counsel was ineffective for failing to object to his classification as a Tier I offender, and for failing to move to dismiss the complaint for insufficient evidence pursuant to Crim. R. 29.

{¶45} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶46}** Appellant argues counsel was ineffective for failing to make a Crim. R. 29 motion to dismiss the complaint at the end of the State's case, based on insufficient evidence.  In our discussion of Appellant's third assignment of error, we found the judgment finding Appellant delinquent by reason of rape was supported by sufficient evidence.  Therefore, Appellant has not demonstrated a reasonable probability the outcome of the trial would have been different had counsel made a Crim. R. 29(A) motion to dismiss the complaint.

**{¶47}** Appellant also argues counsel was ineffective for failing to object to his classification as a Tier I sex offender registrant.  Both the prosecutor and the State recommended Appellant be classified as a Tier II offender.  Counsel for Appellant argued strenuously against the findings of Dr. Miller concerning Appellant's lack of empathy for the victim and his unwillingness to accept responsibility for his actions.  While counsel did not expressly object when the court stated it intended to classify Appellant as a Tier I offender, we find counsel's actions did not fall below an objective standard of reasonable representation.  Further, as we discussed in Appellant's fourth assignment of error, the trial court did not abuse its discretion in classifying him as a Tier I offender; therefore, Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel specifically objected after the court made its classification ruling.

**{¶48}** The fifth assignment of error is overruled.

**{¶49}** The judgment of the Licking County Common Pleas Court, Juvenile Division, is affirmed.


By: Hoffman, P.J.

Gwin, J.  and

Wise, John, J. concur