[Cite as *In re M.B.*, 2020-Ohio-6927.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : | Hon. Earle E. Wise, Jr., J. |
| IN RE M.B. | : |  |
|  | : | Case No. 2020 CA 00027 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case Nos. 20-DL-20 and 20-TR-34

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: December 29, 2020

APPEARANCES:

For Plaintiff-Appellee:

R. KYLE WITT
FAIRFIELD COUNTY PROSECUTOR

KIRK L. SHAW
239 West Main Street, Suite 101
Lancaster, OH 43130

For Defendant-Appellant:

GLORIA L. SMITH
670 Meridian Way #188
Westerville, OH 43082

*Delaney, P.J.*

{¶1}   Appellant M.B. appeals the May 26, 2020 judgment of the Fairfield County Court of Common Pleas, Juvenile Division. Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

**Accident and Arraignment**

{¶2}   On April 23, 2019, at approximately 8:00 p.m., Appellant M.B. was driving her vehicle northbound on the U.S. 33 West exit ramp. When M.B. turned left into the intersection at the stop sign, her vehicle was struck by a motorcycle traveling eastbound on Coonpath Road driven by T.J.M. and with passenger S.L.M. T.J.M. and S.L.M. were ejected off the motorcycle and died from their injuries. At the time of the accident, M.B. was 17 years old.

{¶3}   On January 17, 2020, Appellee State of Ohio filed a complaint with the Fairfield County Court of Common Pleas, Juvenile Division, charging M.B. with two counts of vehicular manslaughter, second-degree misdemeanors in violation of R.C. 2903.06(A)(4). She was also cited with failure to yield the right-of-way, in violation of R.C. 4511.41, a minor misdemeanor.

{¶4}   The traffic crash report completed by the Ohio State Highway Patrol was filed on January 21, 2020. The traffic crash report noted that at the time of the accident, T.J.M. had a blood alcohol content level of 0.096. The traffic crash report stated T.J.M. was driving straight ahead in the proper lane, he was not distracted, and there were no contributing circumstances to the accident by T.J.M.. The report showed there was a skid mark from the motorcycle tire some distance before the point of impact. According to the

traffic crash report, the contributing circumstance to the accident was M.B.'s failure to yield.

{¶5} Jason A. Price filed a notice of appearance as M.B.'s counsel on January 23, 2020. He filed a demand for discovery on January 23, 2020.

{¶6} M.B. was arraigned on February 3, 2020 and she denied the charges. The juvenile court notified M.B. of the maximum penalties for the charges of vehicular manslaughter and failure to yield the right-of-way. (Arraignment, T. 6-9). At the arraignment, Price stated M.B. retained an accident reconstructionist and the State was conducting an accident reconstruction. (Arraignment, T. 12).

### Plea Negotiations

{¶7} In the State's appellate brief, it refers to the plea negotiations that took place between the State and Price. These negotiations are not part of the trial record, nor is there an affidavit referring to the negotiations.

{¶8} According to the State's appellate brief, Price argued in negotiations that M.B. had a defense because at the time of the accident, T.J.M.'s blood alcohol level was above the legal limit. The argument was that because T.J.M. was operating his motorcycle in contravention of law, he was not legally on the roadway. The State countered that despite the alcohol infraction, T.J.M.'s driving was normal and not the proximate cause of the accident according to the accident reconstruction.

### Admission and Disposition

{¶9} On May 26, 2020, the trial court held a plea hearing by video. The parties appeared remotely due to the COVID-19 state of emergency. At the time of hearing, M.B. was 18 years old. The juvenile court judge informed M.B. the hearing was considered an

adjudicatory hearing where she would be making an admission to the charges and the court would be disposing of the matter. (T. 5). Price notified the judge that M.B. was going to enter a no contest plea to the charges. (T. 5).

{¶10} Before the juvenile court started the plea colloquy, the judge explained it was important that M.B. understand everything that was happening. (T. 6). If she was confused or did not understand what was going on or being said, she should inform the judge. (T. 5). If she had a question, the judge would take a break so she could speak with her attorney. (T. 5).

{¶11} The judge first outlined the order of the proceedings for M.B. He next explained the right of M.B. to have an attorney and her right to a trial where the State would have to prove the charges beyond a reasonable doubt. He explained that if she made an admission, she was waiving her right to trial. (T. 7). M.B. stated that she understood. If M.B. had a trial, the judge explained she would have the right to question the State's witnesses, subpoena witnesses, present evidence, and testify at trial or remain silent. The judge asked M.B. again that if she understood that if she made an admission, she was waiving those trial rights. M.B. stated she understood. (T. 8).

{¶12} The judge explained the maximum penalties for vehicular manslaughter, misdemeanors of the second degree in violation of R.C. 2903.06(A)(4). The charges carried the potential for a $200 fine, 90 days of detention, terms of community control, and probation. (T. 9). The charges included potential mandatory driver's license suspension and six traffic points. (T. 10). The judge next explained the maximum penalties for the citation of failure to yield the right-of-way was a $50 traffic fine plus court costs and a suspension of a driver's license until age 21. (T 11). The judge asked M.B. if

she understood. She answered in the affirmative. The judge asked the State and Price if they were satisfied with the juvenile court's explanation of M.B.'s rights and penalties, to which they responded in the affirmative. (T. 11).

{¶13} The State presented a statement of the facts and after the juvenile court inquired, Price stated M.B. had nothing to add to the facts and was prepared to enter her plea to the charges. (T. 13). M.B. entered a no contest plea to the three charges and based on her admission, the juvenile court found beyond a reasonable doubt that M.B. was delinquent, according to R.C. 2152.02, and was a juvenile traffic offender. (T. 13-14).

{¶14} The State read the dispositional recommendations to which the parties agreed, and the juvenile court sentenced M.B. to the agreed terms. The juvenile court sentenced M.B. to non-reporting community control; 80 hours of community service; court costs; one-year suspension of her driver's license from February 3, 2020 to February 2, 2021, on which date the case would automatically seal without a hearing; four-month driving suspension (already served); driving privileges for work, school, and medical transport for her father; and an intensive driving program. (T. 14-15; 35). The court also assessed M.B. six points on her driver's license.

{¶15} The admission and disposition were journalized via judgment entry filed on May 26, 2020. It is from this judgment entry that M.B. now appeals.

## ASSIGNMENTS OF ERROR

{¶16} M.B. raises three Assignments of Error:

{¶17} "I. APPELLANT WAS DENIED THE RIGHT TO COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶18} "II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN COUNSEL FAILED TO PRESENT A CRITICAL FACT TO THE TRIAL COURT DURING THE NO CONTEST PLEA.

{¶19} "III. THE TRIAL COURT FAILED TO COMPLY WITH JUVENILE PROCEDURE RULE 29(D) AND CRIMINAL PROCEDURE RULE 29(D) IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATED CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

**ANALYSIS**

**I. and II. Ineffective Assistance of Counsel**

{¶20} M.B. contends in her first and second Assignments of Error that she was denied the effective assistance of counsel because her trial counsel failed to raise a fact at the adjudicatory hearing that would have changed the outcome of the proceeding. She states her trial counsel did not advise the trial court at the hearing that T.J.M.'s blood alcohol level was above the legal limit at the time of the accident. Because T.J.M. was not operating the motorcycle in a lawful manner, she argues there was no evidence that M.B. committed the predicate offense of failure to yield the right-of-way and therefore, the trial court could not have found M.B. delinquent of vehicular manslaughter beyond a reasonable doubt. We first address M.B.'s argument that trial counsel was ineffective as to the predicate offense of failure to yield the right-of-way and next, we review counsel's alleged ineffectiveness as to the charges of vehicular manslaughter.

**Standard of Review**

{¶21} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689, 104 S.Ct. 2052, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690, 104 S.Ct. 2052.

{¶22} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

**Vehicular Manslaughter and Failure to Yield**

{¶23} M.B. entered a plea of no contest to two counts of vehicular manslaughter and failure to yield the right-of-way. Vehicular manslaughter is defined by R.C. 2903.06(A)(4), which reads:

(A) No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * in any of the following ways:

* * *

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

The specific minor misdemeanor offense of failure to yield the right-of-way, in violation of R.C. 4511.41, states:

(A) When two vehicles, including any trackless trolley or streetcar, approach or enter an intersection from different streets or highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

"Right-of-way" is defined by R.C. 4511.01(UU) as, "[t]he right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle * * * approaching from a different direction into its or the individual's path."

{¶24} After the State read the statement of facts as to the charges, M.B.'s trial counsel declined to add to the facts. M.B. entered a no contest plea to all three counts and the juvenile court accepted M.B.'s admission. The juvenile court next found that

beyond a reasonable doubt, M.B. was delinquent according to R.C. 2152.02 and a juvenile traffic offender.

### Proceeding in a Lawful Manner

{¶25} M.B.'s arguments on appeal refer to the predicate offense, failure to yield the right-of-way. She contends that based on the pertinent law regarding the right-of-way, trial counsel was ineffective because he did not add to the statement of facts that T.J.M.'s blood alcohol level was above the legal limit in contravention of Ohio's traffic laws. She argues that if counsel had advised the juvenile court at the adjudicatory hearing of T.J.M.'s blood alcohol level, the outcome of the proceeding would have been different. The predicate offense of failure to yield would have been dismissed and she could not have been found delinquent of vehicular manslaughter.

{¶26} The law regarding the right-of-way is described in *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, 827 N.E.2d 811 (3rd Dist.):

Accordingly, a driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him. *State v. Bush*, (July 30, 1999), 2d Dist. No. 17671, 1999 WL 960582, citing *Vavrina v. Greczanik*, (1974) 40 Ohio App.2d 129, 135, 69 O.O.2d 146, 318 N.E.2d 408. Conversely, the driver with the right of way forfeits this preferential status over other drivers if he or she fails to proceed in a lawful manner. *Id*. However, because the law presumes that a vehicle that ostensibly has the right of way is proceeding lawfully, the state is not required to prove lawful operation as an element of proving a violation of 4511.44(A), failure to yield. *State v. Harris*, (Dec. 30, 1991), 12th Dist. No.

CA91–06–012, 1991 WL 278245. Rather, a defendant who asserts that an opposing driver's right of way has been forfeited "is required to present evidence rebutting the presumption of lawful operation." *Id.* "A driver proceeds in a lawful manner by complying with Ohio traffic laws." *Bush,* supra, citing *Vavrina,* supra, 40 Ohio App.2d at 136, 69 O.O.2d 146, 318 N.E.2d 408.

* * * *

[When the trial court was] presented with evidence tending to rebut the presumption that [the other driver] was proceeding in a lawful manner, the trial court herein was obligated to resolve the issue whether [the other driver] forfeited his right of way. *Harris,* supra; see, also, *State v. Neff* (1975), 41 Ohio St.2d 17, 18, 70 O.O.2d 82, 322 N.E.2d 274; *Upper Arlington v. Streets* (Dec. 20, 1994), 10th Dist. No. 94APC04–534, 1994 WL 714609.

*In re Neill,* 2005-Ohio-1696, ¶¶ 10–12; *State v. Rayner,* 5th Dist. No. 2015CA00105, 2016-Ohio-3161, 65 N.E.3d 84, 2016 WL 3019489, ¶ 21

{¶27} In this case, the presumption was that T.J.M. had the right-of-way at the time of the accident and was proceeding lawfully. The traffic crash report stated that T.J.M. was driving straight ahead in the proper lane, was not distracted, and there were no contributing circumstances by T.J.M. to the accident. Pursuant to *In re Neill,* there was no burden on the State to prove T.J.M.'s lawful operation of the motorcycle as an element of the charge of failure to yield the right-of-way.

{¶28} The presumption of lawful operation is not absolute, however. The presumption may be overcome if the driver with the right-of-way forfeits the preferential status over other drivers by failing to proceed in a lawful manner. *In re Neill, supra* at ¶ 10. The law places the burden on the defendant to present evidence rebutting the presumption of lawful operation. Accordingly, the burden fell to M.B. to assert that T.J.M. forfeited the right-of-way by presenting evidence the decedent was not proceeding in a lawful manner.

{¶29} To proceed in a lawful manner means to comply with Ohio traffic laws. *Vavrina, supra*, 40 Ohio App.2d at 136. M.B. argues on appeal that while the traffic crash report states that T.J.M. was driving straight ahead in the proper lane and there were no contributing circumstances by T.J.M. to the accident, it also states that T.J.M. had a blood alcohol content level of 0.096 and an ethanol concentration of 0.135 in his urine. R.C. 4511.19(A) reads:

(A)(1) No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

(b) The person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.

(c) The person has a concentration of ninety-six-thousandths of one per cent or more but less than two hundred four-thousandths of one per cent by weight per unit volume of alcohol in the person's blood serum or plasma.

* * *

(e) The person has a concentration of eleven-hundredths of one gram or more but less than two hundred thirty-eight-thousandths of one gram by weight of alcohol per one hundred milliliters of the person's urine.

* * *

{¶30} In *Noaker v. Gerdeman*, 3rd Dist. Henry No. 7-03-10, 2004-Ohio-2799, a motorcycle collided with a man mowing grass around his mailbox with a lawn tractor. The collision killed the driver of the motorcycle and injured the driver of the lawn tractor. It was determined the blood alcohol of the motorcycle driver was above the legal limit. The lawn tractor driver brought a personal injury action against the estate of the motorcycle driver where he argued the motorcycle driver's intoxication should result in the loss of his preferential right-of-way. *Id.* at ¶ 4. The court held the motorcycle driver was driving with a prohibited concentration of alcohol in his blood in violation of R.C. 4511.19(A); therefore, he forfeited his absolute right-of-way. *Id.* at ¶ 8.

{¶31} In the case sub judice, there was evidence in the record that T.J.M. was driving with a prohibited concentration of alcohol in his blood in violation of R.C. 4511.19. The evidence of T.J.M.'s blood alcohol level was available to trial counsel to rebut the presumption that T.J.M. was proceeding in a lawful manner. The question before this Court, however, is not whether T.J.M. forfeited his right-of-way. The issue on appeal is whether M.B.'s trial counsel was *ineffective* for failing to advise the juvenile court of this evidence during the adjudicatory hearing. Based on our analysis below, we answer the question of whether trial counsel was ineffective in the negative.

**The Role of the Fact Finder**

{¶32} After the defendant presents evidence tending to rebut the presumption that the driver was not proceeding in a lawful manner, it is then the role of the fact finder to weigh the evidence and determine whether the defendant is in violation of R.C. 4511.44(A). *In re Neill, supra*, 2005-Ohio-1696, ¶ 12. It is the trial court's obligation to resolve the issue whether the other driver forfeited his right-of-way. *Id*.

{¶33} The analysis of whether M.B. was denied the effective assistance of counsel comes into play when we consider the trial counsel's trial strategies and the juvenile court's role to determine whether the defendant rebutted the presumption that the other driver was proceeding lawfully. A properly licensed attorney is presumed competent. *Matter of C.Q.*, 5th Dist. Licking No. 2020 CA 00012, 2020-Ohio-5531, 2020 WL 7078332, ¶ 45 citing *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, M.B. must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, M.B. must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

{¶34} In this case, the conduct of M.B.'s trial counsel in not adding T.J.M.'s blood alcohol level to the statement of facts during the adjudicatory hearing did not so undermine the proper functioning of the adversarial process that the judgment of the juvenile court cannot be relied upon as having produced a just result. The traffic crash

report stated that T.J.M.'s blood alcohol level was above the legal limit. The traffic crash report also stated that at the time of the accident, T.J.M. was driving straight ahead in the proper lane, he was not distracted, and he did not engage in any contributing circumstances to the accident. The traffic report noted a skid mark from the motorcycle tire some distance before the point of impact, showing that T.J.M. braked before colliding with M.B.'s vehicle. The traffic crash report stated that M.B.'s actions were the contributing circumstance to the accident.

{¶35} While there was evidence that T.J.M.'s blood alcohol level was above the legal limit, there was no evidence to show that his condition of being under the influence contributed to the cause of the accident. Based on our application of the *Strickland* test, we cannot say if trial counsel had raised the fact of the blood alcohol level, the court would have weighed the evidence of the blood alcohol level against the totality of the evidence in the traffic crash report to find that T.J.M. had forfeited his right-of-way so that the citation of failure to yield would have been necessarily dismissed. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra* 466 U.S. at 694. We cannot summarily conclude in this case that trial counsel was ineffective for failing to raise the fact of T.J.M.'s blood alcohol level during the adjudicatory hearing based on the role of the juvenile court as fact finder to resolve the issue of whether T.J.M. forfeited his right-of-way in light of the evidence in the traffic crash report.

**Vehicular Manslaughter and Contributory Negligence**

{¶36} We next consider the issue of whether trial counsel was ineffective for failing to raise the fact of T.J.M.'s blood alcohol level as to the charges for vehicular

manslaughter. "It is well-settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident." *State v. Dendak*, 5th Dist. Stark No. 2013 CA 00065, 2013-Ohio-5694, ¶ 14 citing *State v. Langenkamp*, 137 Ohio App.3d 641, 621, 739 N.E.2d 404 (2000). In *Dendak*, we found the aforesaid holding was applicable to offense of vehicular manslaughter. *Dendak, supra* at ¶ 14.

{¶37} As stated above, the traffic crash report concluded that T.J.M. did not commit any contributing circumstances to the accident. While his blood alcohol level was above the legal limit, T.J.M. was not distracted, he was driving within his lane of traffic, and he attempted to brake before impact. The traffic crash report found the actions of M.B. were the sole proximate cause of the accident. The plea negotiations between the State and trial counsel are not in the record and are therefore unavailable for our review. We consider only the facts in the record and the law regarding proximate cause and vehicular manslaughter. The facts of this case are tragic for all parties, but on these facts, we do not find M.B. was denied effective assistance of counsel because she cannot show her trial counsel's performance was so deficient that the outcome of the adjudicatory hearing would have been different.

{¶38} M.B.'s first and second Assignments of Error are overruled.

### III. Juv.R. 29(D)(1)

{¶39} In her third Assignment of Error, M.B. contends the juvenile court did not engage in an adequate colloquy before accepting M.B.'s no contest plea; therefore, her admission was not knowing, intelligent, and voluntary. We disagree.

**Standard of Review**

{¶40} Juv.R. 29(D) provides:

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

{¶41} "The purpose of Juv.R. 29(D) is to ensure that minors are afforded their due process right to fundamentally fair treatment in juvenile court proceedings." *In re Miller*, 119 Ohio App.3d 52, 57, 694 N.E.2d 500 (2nd Dist.1997), citing *In re Harris*, 104 Ohio App.3d 324, 662 N.E.2d 34 (2nd Dist.1995). "Before accepting a minor's admission, the court must personally address the minor and determine that he or she is making the admission voluntarily, and that he or she understands the rights that are waived by entering an admission." *Id.*, citing Juv.R. 29(D).

{¶42} In a juvenile delinquency case, the preferred practice is strict compliance with Juv.R. 29(D). *In re T.W.*, 5th Dist. Licking No. 16-CA-38, 2016-Ohio-8371, 2016 WL 7496640, ¶ 9 citing *In re C.S.*, 115 Ohio St.3d 267, 874 N.E.2d 1177, 2007–Ohio–4919, ¶ 113. However, if the trial court substantially complies with Juv.R. 29(D) in accepting an admission from a juvenile, the plea is deemed voluntary absent a showing of prejudice or a showing that the totality of the circumstances does not support a finding of a valid

waiver. *Id.* Substantial compliance for purposes of juvenile delinquency proceedings means that under the totality of the circumstances, the juvenile subjectively understood the implications of his plea. *Id.*

**Plea Colloquy**

{¶43} Upon our review of the adjudicatory hearing transcript, we find the juvenile court substantially complied with Juv.R. 29(D) in accepting the admission from M.B. The adjudicatory hearing was somewhat unusual because it occurred remotely due to the COVID-19 state of emergency. M.B.'s trial counsel seemed to be in a different location than M.B. (T. 5). The juvenile court started the hearing by explaining to M.B. the purpose of the hearing:

> So [M.B.], today is what is considered an adjudicatory hearing where you would be making an admission to the charges, and the Court would be disposing of the matter. * * * And so everyone understands what a no contest plea is, it's an admission – it's a plea which is admitting to facts sufficient for a guilty finding, and the Court finds the juvenile guilty of the offense.

(T. 4-5).

{¶44} The juvenile court next instructed M.B. that if something were happening during the hearing that she did not understand, she could stop the proceedings and she would be muted so she could call her attorney. (T. 6). The judge stated, "I want you to be aware, it's very important to me that you understand everything that's going on here. So we'll just take this step by step." (T. 6).

{¶45} The judge first outlined the order of the proceedings for M.B.:

So I'm going to advise you of your rights again, M.B. And then I'm going to advise you of what the maximum penalties are for the charges that you would be making an admission to. When I get done with that, I'll ask if you have any questions, if you need to speak with Mr. Price about anything, then Mr. Shaw is going – the prosecutor is going to read his statement of facts of what happened in this accident, and you will be asked to – you will enter a no contest plea to those facts, and then the Court would make that finding that you, in fact, had admitted to the facts that you are charged with.

(T. 7).

{¶46} He next explained M.B.'s rights:

THE COURT: So first of all, let's step back, M.B., and make sure that you understand what your rights are. You do have the right to an attorney, and Mr. Price is here in that capacity representing you as legal counsel. And we will accommodate you however you need during this hearing if you need to speak to him privately. You do have a right to a trial on these charges. If you make an admission today, you are waiving a trial. You have a right to have the State of Ohio prove these charges beyond a reasonable doubt. When you make an admission, you waive that trial, and you waive that right. Do you understand that?

M.B.: Yes, Your Honor.

THE COURT: All right. You also have a right to question – at trial you would have the right to question any of the witnesses that the State of Ohio would call against you, and you would also have a right to use a Court order, which

is a subpoena, to bring in any evidence or witnesses that you felt are necessary for you to prove your case. You also have a right to testify at your trial, or a right to remain silent. And if you testified, anything you say could be used against you. You also have a right to a record of these proceedings. * * * Again, if you make an admission, you're waiving those trial rights; no trial, no witness questioning, you don't testify; you waive those rights. Do you understand that?

M.B.: Yes, Your Honor.

THE COURT: Do you have any questions as far as your rights here today?

M.B.: No, thank you.

(T. 7-8).

{¶47} The judge explained the maximum penalties for vehicular manslaughter, misdemeanors of the second degree in violation of R.C. 2903.06(A)(4). The charges carried the potential for a $200 fine, 90 days of detention, terms of community control, and probation. (T. 9). The charges included potential mandatory driver's license suspension and six traffic points. (T. 10). The judge next explained the maximum penalties for the citation of failure to yield the right-of-way was a $50 traffic fine plus court costs and a suspension of a driver's license until age 21. (T 11). The judge asked M.B. if she understood. She answered in the affirmative. The judge asked the State and Price if they were satisfied with the juvenile court's explanation of M.B.'s rights and penalties, to which they responded in the affirmative. (T. 11).

**Possible Defense**

{¶48} M.B. contends that her no contest plea was not given knowingly, intelligently, and voluntarily because when the juvenile court explained the nature of the charges, the court did not explain the defenses available to her. Juv.R. 29(D)(1) states the court shall not accept the admission without determining that the "party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission." M.B. does not cite to any case law to support her argument but it appears she is arguing the juvenile court did not comply with Juv.R. 29(D)(1) because it did not explain that she was voluntarily waiving the defense that T.J.M. was not proceeding lawfully because he was under the influence of alcohol at the time of the accident.

{¶49} According to the State's appellate brief, the parties were aware that T.J.M.'s blood alcohol level was above the legal limit based on the traffic crash report and it was discussed during plea negotiations. Based on *Dendak, supra*, M.B.'s trial counsel did not pursue that argument. The plea negotiations are not in the record available for our review. The record available to this Court shows that while T.J.M.'s blood alcohol level was above the legal limit, the traffic crash report showed his actions did not contribute to the circumstances of the accident. M.B. was determined to be the sole proximate cause of the accident. Based on our previous analysis of the right-of-way and *Dendak*, trial counsel was not ineffective for failing to raise the fact of the blood alcohol level as a defense.

{¶50} "Before accepting a minor's admission, the court must personally address the minor and determine that he or she is making the admission voluntarily, and that he or she understands the rights that are waived by entering an admission." *In re Miller*, 119

Ohio App.3d 52, 57, 694 N.E.2d 500 (2nd Dist.1997), citing *In re Harris*, 104 Ohio App.3d 324, 662 N.E.2d 34 (2nd Dist.1995), citing Juv.R. 29(D). Upon the juvenile court's colloquy in this case and the totality of the circumstances, we find the trial court substantially complied with Juv.R. 29(D). The juvenile court personally addressed M.B. to determine that she was making the admission voluntarily. The record shows that she understood the rights that are waived by entering an admission.

{¶51} M.B.'s third Assignment of Error is overruled.

## CONCLUSION

{¶52} The judgment of the Fairfield County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.